[No. H016763. Sixth Dist. May 13, 1999.]

PLAZA HOLLISTER LIMITED PARTNERSHIP, Plaintiff and
Respondent, v.
COUNTY OF SAN BENITO, Defendant and Respondent;
ARNOLD FONTES, as Assessor, etc., Intervener and Appellant.

**COUNSEL**

Coughlin, Paxton & Pipal, David E. Pipal and Peter R. Spurzem for Intervener and Appellant.

Daniel E. Lungren, Attorney General, Joyce E. Hee, Deputy Attorney General for the State Board of Equalization as Amicus Curiae on behalf of Intervener and Appellant.

Nossaman, Guthner, Knox & Elliott and Douglas J. Maloney for California Assessors' Association as Amicus Curiae on behalf of Intervener and Appellant.

Divelbiss, Divelbiss & Bonzell, Rod Divelbiss, Mark J. Divelbiss, Scott A. Bonzell; and Robert S. Beach for Plaintiff and Respondent.

Steven R. Sanders, County Counsel, for Defendant and Respondent.

**OPINION**

**ELIA, J.**—This is a property tax refund action brought by Plaza Hollister Limited Partnership (Plaza Hollister), a California corporation, against the County of San Benito (County). The property at issue was purchased by Plaza Hollister on December 31, 1984, and apparently was a federally subsidized apartment complex, which was operated under section 236 of the National Housing Act (12 U.S.C. § 1715z-1). The judgment was entered pursuant to a stipulation between Plaza Hollister and the San Benito County Board of Supervisors (Board of Supervisors) on behalf of the County. Arnold Fontes, the San Benito County Assessor (Assessor), who was not a party to the judgment, appeals from the denial of his motion to vacate the judgment. (Code Civ. Proc., § 904.1, subd. (a)(2).)

The stipulated judgment reduced the base-year value of the property to $2,350,000 and ordered that value to be placed on the supplemental roll for 1984-1985 and on the regular roll for 1985-1986. It ordered the value of the

property to be increased by a 2 percent inflation factor through 1990-1991 and stated that this adjustment would result in a value of $2,594,589 for 1990-1991. It ordered this revised value of $2,594,589 to be placed on the roll for the years 1990-1991 through 1993-1994. The judgment provided that Plaza Hollister would "receive refunds of taxes paid for each year from December 31, 1984 forward based on the preceding recalculations of value" and interest as allowed by law.

On appeal, the Assessor argues that the stipulated judgment "improperly invades the constitutional and statutory authority granted to the County Board of Equalization and to [the County Assessor's office] to establish and to equalize the value of property for tax purposes" and conflicts with the statutory procedures for challenging assessments and obtaining refunds. The California Assessors' Association and the State Board of Equalization each filed an amicus curiae brief in support of the Assessor. They both contend that the Board of Supervisors, not acting in its capacity as the San Benito County Board of Equalization (Board of Equalization), has no statutory or constitutional authority to determine property value and, therefore, no authority to settle this case without providing for a remand to the Board of Equalization to exercise its judgment as to value. The California Assessors' Association further argues that the County has a fiduciary duty to other local taxing agencies, which it breached, by stipulating to reduced values.

We reverse.

A.  *Background*

Plaza Hollister purchased the subject apartment complex on December 31, 1984, for a purchase price of $4,060,000. The Assessor assessed the property at a value of $4,009,500 for 1985-1986 fiscal year. For the 1986-1987 fiscal year, the property was assessed at a value of $4,084,138. On September 15, 1986, Plaza Hollister commenced an assessment appeal by filing an application for changed assessment contesting the base-year value.

At the hearing before the Board of Supervisors convened as the Board of Equalization, Plaza Hollister argued that the nominal sales price should have been reduced by cash equivalent adjustments, citing Revenue and Taxation Code[1]

---

[1] All further statutory references are to the Revenue and Taxation Code unless otherwise stated.

section 110 and property tax rules regarding the value concept and the comparative sales approach to value.[2]     ■■ Plaza Hollister suggested a number

---

[2]At the time of the hearing, section 110 defined value as follows: "Except as is otherwise provided in Section 110.1, 'full cash value' or 'fair market value' means the amount of cash or its equivalent which property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other and both with knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used.and of the enforceable restrictions upon those uses and purposes." (Stats. 1978, ch. 292, § 26, p. 608.)

A 1988 amendment added subdivision (b), which provided in part: "(b) For purposes of determining the 'full cash value' or 'fair market value' of real property, other than possessory interests, being appraised upon a purchase, 'full cash value' or 'fair market value' shall be the purchase price paid in the transaction unless it is established by a preponderance of the evidence that the real property would not have transferred for that purchase price in an open market transaction. The purchase price shall, however, be rebuttably presumed to be the 'full cash value' or 'fair market value' if the terms of the transaction were negotiated at arms length between a knowledgeable transferor and transferee neither of which could take advantage of the exigencies of the other. 'Purchase price,' as used in this section, means the total consideration provided by the purchaser or on the purchaser's behalf, valued in money, whether paid in money or otherwise. . . ." (Stats. 1988, ch. 1519, § 1, pp. 5397-5398.)

Section 110.1 provides in pertinent part: "(a) For purposes of subdivision (a) of Section 2 of Article XIII A of the California Constitution, 'full cash value' of real property, including possessory interests in real property, means the fair market value as determined pursuant to Section 110 for either of the following: [¶] (1) The 1975 lien date. [¶] (2) For property which is purchased, is newly constructed, or changes ownership after the 1975 lien date, either of the following: [¶] (A) The date on which a purchase or change in ownership occurs. [¶] (B) The date on which new construction is completed, and if uncompleted, on the lien date. [¶] (b) The value determined under subdivision (a) shall be known as the base year value for the property. [¶] . . . [¶] (f) For each lien date after the lien date in which the full cash value is determined pursuant to this section, the full cash value of real property, including possessory interests in real property, shall be adjusted by an inflation factor, which shall be determined as provided in subdivision (a) of Section 51."

Section 2 of title 18 of the California Code of Regulations states in part: "(a) In addition to the meaning ascribed to them in the Revenue and Taxation Code, the words 'full value', 'full cash value', 'cash value', 'actual value', and 'fair market value' mean the price at which a property, if exposed for sale in the open market with a reasonable time for the seller to find a purchaser, would transfer for cash or its equivalent under prevailing market conditions between parties who have knowledge of the uses to which the property may be put, both seeking to maximize their gains and neither being in a position to take advantage of the exigencies of the other. [¶] When applied to real property, the words 'full value', 'full cash value', 'cash value', 'actual value', and 'fair market value' mean the price at which the unencumbered or unrestricted fee simple interest in the real property (subject to any legally enforceable governmental restrictions) would transfer for cash or its equivalent under the conditions set forth in the preceding sentence. [¶] (b) When valuing real property (as described in paragraph (a)) as the result of a change of ownership (as defined in Revenue and Taxation Code, Section 60, et seq.) for consideration, it shall be rebuttably presumed that the consideration *valued in money, whether paid in money or otherwise*, is the full cash value of the property. The presumption shall shift the burden of proving value by a preponderance of

of alternative values for the property, all involving cash equivalent adjustments[3] to the nominal sales price.[4]

At the hearing, the Assessor explained the basis for assessments for the 1985-1986 and 1986-1987 fiscal years.[5] The Assessor submitted a letter from the State Board of Equalization to county assessors, which was dated December 24, 1986, and which stated the state board's position that the selling price of a property constructed under section 236 of the National Housing Act was not subject to cash equivalent adjustments because of

---

the evidence to the party seeking to overcome the presumption. . . ." (As amended in 1991, italics added.)

Section 3 of title 18 of the California Code of Regulations states that in estimating value as defined in section 2 that assessor shall consider one or more of the stated value approaches, including the comparative sales approach, as appropriate.

Section 4 of title 18 of the California Code of Regulations provides in pertinent part: "When reliable market data are available with respect to a given real property, the preferred method of valuation is by reference to sales prices. In using sales prices of the appraisal subject or of comparable properties to value a property, the assessor shall: [¶] (a) Convert a noncash sale price to its cash equivalent by estimating the value in cash of any tangible or intangible property other than cash which the seller accepted in full or partial payment for the subject property and adding it to the cash portion of the sale price and by deducting from the nominal sale price any amount which the seller paid in lieu of interest to a lender who supplied the grantee with part or all of the purchase money."

[3]An entire assessor's handbook is devoted to cash equivalent analysis. (See Assessor's Handbook—Cash Equivalent Analysis; Assessment Standards Division; Property Taxes Department; California State Board of Equalization (Mar. 1985).) Assessors Handbooks "have . . . been relied upon by the courts in interpreting valuation questions . . . and have been accorded 'great weight' in this regard. [Citation.] However, the handbooks do not contain the regulations, nor do they possess the force of law. . . . [I]n any conflict between the handbooks and the regulations, the latter must govern." (*Prudential Ins. Co.* v. *City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1155 [236 Cal.Rptr. 869].)

[4]According to the taxpayer information provided at the assessment appeals hearing, the consideration consisted of $348,000 in total cash payments and an all-inclusive 15-year residual receipts note for $3,712,000 secured by the partnership interest of the buyers. The cash was to be paid one-third on the closing date, one-third one year later, and one-third two years later. The note was calculated based upon an interest rate of 10.25 percent payable at $31,609 per month through December 31, 1999. However, the monthly payments were actually limited to $12,500, the amount necessary to service an underlying note, which had a balance of $1,886,000 and required monthly payments of $12,500 through the year 2014. Unpaid amounts under the all-inclusive 15-year residual receipts note accrued and were payable at maturity.

[5]The 1985-1986 assessed value was based on the change of ownership statement (see § 480) and the business property statement (see § 441) that were filed with the Assessor's Office. The Assessor valued the land at $870,000, the improvements at $3,049,900, and the personal property at $89,600, for a total value of $4,009,500. The 1986-1987 assessment was calculated by increasing the value of land and improvements by 2 percent and by reducing the value of the personal property to $85,840.

federal governmental financing subsidies.[6] The Board of Supervisors sitting as the Board of Equalization upheld the Assessor's valuation of the subject property at the close of the hearing on February 2, 1987.

On December 10, 1990, Plaza Hollister filed a written claim for a partial refund of property taxes on the apartment complex for "fiscal year 1986-87, plus all prior years whose taxes were affected by any Supplemental Valuation issued concerning this property and involved in the tax appeal referred to below . . . ." The claim alleged that the Board of Supervisors had failed to apply and follow the mandatory statutory requirements of the Revenue and Taxation Code and the rules of the State Board of Equalization "in determining the proper valuation methodology to be used in appraising the subject property, or in developing capitalization rates, or in discounting to cash equivalent values . . . the mortgages and other non-cash consideration assumed or given by the purchasers of the subject or similar properties which were used as comparable sales in determining the value of the sale of the subject property or the capitalization rate to be applied to the income streams of the subject properties in order to determine their proper values." The County rejected the claim on January 22, 1991.

On July 18, 1991, Plaza Hollister filed a tax refund action. Plaza Hollister sold the property on or about January 14, 1994. The case was set for trial on May 30, 1996, and the administrative record and trial briefs were filed. The stipulated judgment was filed on July 19, 1996.

On January 3, 1997, the Assessor filed a notice of motion to vacate the stipulated judgment. The Assessor argued that the judgment was erroneous and void on various grounds. The Assessor contended, among other things, that (1) the conclusive presumption regarding base-year value, which is established by section 80, subdivision (a)(3), precluded the court from reducing that base-year value, (2) county boards of equalization, not the courts, are empowered by California's Constitution to equalize assessments and determine value, and (3) even if a court could validly review the base-year value upheld by the Board of Equalization and find it incorrect,

---

[6]This continues to be the position taken in the Assessor's Handbook-Cash Equivalent Analysis: "A distinction is made in the financing of property constructed under the auspices of the National Housing Act (specifically § 236). The builder-developer receives a government subsidy in the form of the difference between a one percent and the prevailing interest rate. The private lender in making the loan determines the market interest rate and the federal government supplies the differential from one percent. Properties constructed under § 236 can be sold; the selling prices, including the subsidized interest, are not subject to cash equivalent analysis. . . ." (2 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1998 supp.) § 32.07, p. 335.) However, the issue is not before us now and the Assessor does not argue on appeal that it was unnecessary to adjust the purchase price to its cash equivalent.

the court was required to remand the matter to the Board of Equalization for a determination of correct value. The motion to vacate was opposed on procedural and substantive grounds.[7] The trial court denied the motion to vacate, finding that "the Board of Supervisors of San Benito County has the right and authority to settle law suits filed against it such as the one in question."

## B. *Authority to Settle Litigation*

Government Code section 25203 provides that a county board of supervisors "shall direct and control the conduct of litigation in which the county, or any public entity of which the board is the governing body, is a party . . . ." The Code of Civil Procedure authorizes courts to enter judgments to which the parties have stipulated: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (Code Civ. Proc., § 664.6.)

The Supreme Court "recognized a century ago that settlement agreements ' "are highly favored as productive of peace and good will in the community," ' as well as ' "reducing the expense and persistency of litigation." ' (*McClure* v. *McClure* (1893) 100 Cal. 339, 343 . . . .)" (*Neary* v. *Regents of University of California* (1992) 3 Cal.4th 273, 277 [10 Cal.Rptr.2d 859, 834 P.2d 119].) "Requiring parties to continue to litigate a matter over which there is no longer a real dispute 'is wasteful of the resources of the judiciary.' [Citation.]" (*Ibid.*) Generally, when parties decide to eliminate the risks of further litigation by stipulated agreement, ". . . the courts should respect the parties' choice and assist them in settlement." (*Id.* at p. 280.)

Nevertheless, a court "may reject a stipulation that is contrary to public policy [citation], or one that incorporates an erroneous rule of law [citation]." (*California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court*

---

[7]The County opposed the motion on the grounds that (1) a motion to vacate under Code of Civil Procedure section 663 was not legally appropriate because the Assessor did not request the entry of another judgment and the Assessor was not an aggrieved party; (2) a determination of the Board of Equalization may be reviewed by the superior court in a refund action under section 5140; (3) the court could exercise its own judgment regarding the legal issue of the applicability of cash equivalency methodology and no remand was necessary because the essential facts were uncontroverted; (4) the Board of Supervisors had complete authority to control and settle the litigation; and (5) the Assessor had no right to assert the affirmative defense of exhaustion of administrative remedies. Plaza Hollister made similar arguments and in addition contended the motion to vacate pursuant to Code of Civil Procedure section 663 was untimely under Code of Civil Procedure section 663a.

(1990) 50 Cal.3d 658, 664 [268 Cal.Rptr. 284, 788 P.2d 1156].) The trial court has the duty to ensure that the stipulated judgment is just and cannot act as a mere puppet. (*Ibid.*) More importantly, a court cannot validly enter a judgment or order which is void even if the parties agree to it. (See *In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020, 1024-1027 [230 Cal.Rptr. 203]; *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; *Reed* v. *Murphy* (1925) 196 Cal. 395, 399-400 [238 P. 78].)

C. *Motion to Vacate: Code of Civil Procedure Section 663*

The Assessor's motion to vacate was made primarily under Code of Civil Procedure section 663. Respondents have suggested various reasons why appellant's motion to vacate was not properly brought under Code of Civil Procedure section 663.[8]

Code of Civil Procedure section 663 provides in pertinent part: "A judgment or decree, when based upon a *decision by the court*, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, *not consistent with or not supported by the facts*; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected. [¶] 2. A judgment or decree not consistent with or not supported by the special verdict." (Italics added.)

The California Supreme Court has held: "[O]ne who is legally 'aggrieved' by a judgment may become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure, section 663. [Citations.] One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment. [Citations.] Appellant's interest "'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."' [Citation.]" (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 736-737 [97 Cal.Rptr. 385, 488 P.2d 953].)

Appellant contends that a motion to vacate a judgment under Code of Civil Procedure section 663 is available against a stipulated judgment

---

[8]This court requested supplemental briefing on the issue whether a motion to vacate pursuant to Code of Civil Procedure section 663 is ever available against a stipulated judgment.

because "there is no reasonable basis on which to distinguish between a judgment based on a 'decision' by the court and a judgment based on a 'decision' by the parties in their settlement agreement." We reject this view because Code of Civil Procedure section 663, by its own terms, applies only to a decision of the court based upon facts or to a special verdict of a jury.

"A motion to vacate under [Code of Civil Procedure] section 663 is a remedy to be used when a trial court draws incorrect conclusions of law or renders an erroneous judgment on the basis of uncontroverted evidence." (*Simac Design, Inc.* v. *Alciati* (1979) 92 Cal.App.3d 146, 153 [154 Cal.Rptr. 676].) A stipulated judgment does not rest upon facts established by evidence. In the case of a stipulated judgment, it is impossible for a court to say that the judgment is not consistent with or not supported by the facts and it is impossible to substitute the correct judgment which is consistent with and supported by the facts.

We have not discovered any reported cases involving a motion to vacate a stipulated judgment pursuant to Code of Civil Procedure section 663 other than the case cited by appellant, *People* v. *Hy-Lond Enterprises, Inc.* (1979) 93 Cal.App.3d 734 [155 Cal.Rptr. 880].[9] That case involved an action by a county district attorney against an operator of skilled nursing facilities for engaging in unfair competition and deceptive advertising. (93 Cal.App.3d at pp. 739-740.) The Attorney General and the Department of Health Services, which were not parties to the stipulated judgment, unsuccessfully moved to vacate the judgment. (*Id.* at p. 739.) They contended that the judgment was void in that it prevented them from performing their statutory duties. (*Ibid.*) The operator of the skilled nursing facilities asserted that they had no standing to attack the judgment. (*Ibid.*)

In reversing the order denying the motion to vacate, the Court of Appeal reiterated the rule stated in *County of Alameda* v. *Carleson, supra,* 5 Cal.3d 730, that " 'one who is legally "aggrieved" by a judgment may become a

---

[9]Neither of the cases cited by the County, *John Siebel Associates* v. *Keele* (1986) 188 Cal.App.3d 560 [233 Cal.Rptr. 231], and *Stevens* v. *Stevens* (1968) 268 Cal.App.2d 426 [74 Cal.Rptr. 54], involved a motion to vacate pursuant to Code of Civil Procedure section 663. In *John Siebel Associates* v. *Keele, supra,* 188 Cal.App.3d 560, a judgment debtor sought to partially vacate a judgment, entered pursuant to stipulation, on the ground that it was void on its face to the extent that it provided for an interest rate greater than the rate set by the Constitution. (*Id.* at pp. 562-563.) In *Stevens* v. *Stevens, supra,* 268 Cal.App.2d 426, "appellant moved to vacate the interlocutory judgment of divorce under the provisions of section 473, Code of Civil Procedure, on the stated ground that she obtained the judgment on respondent's 'fraudulent, false and untrue representations' that he would perform the property settlement agreement and on her own 'mistake and excusable neglect' in relying on said representations." (*Id.* at p. 428.)

party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure section 663. [Citations.] . . .' " (*People* v. *Hy-Lond Enterprises, Inc., supra,* 93 Cal.App.3d at p. 745.) However, a stipulated judgment was not at issue in *County of Alameda* v. *Carleson, supra,* 5 Cal.3d 730.

Apparently, the only procedural issue before the appellate court in *People* v. *Hy-Lond Enterprises, Inc., supra,* 93 Cal.App.3d 734, regarding the motion to vacate was whether the moving parties were "aggrieved" and not the applicability of Code of Civil Procedure section 663. (93 Cal.App.3d at p. 746.) "A case is not authority for an issue neither raised nor considered. [Citations.]" (*People* v. *Wells* (1996) 12 Cal.4th 979, 984; fn. 4 [50 Cal.Rptr.2d 699, 911 P.2d 1374].) Since Code of Civil Procedure section 663 has no logical application to stipulated judgments, relief from such a judgment is not available either to parties of record or to legally aggrieved parties.

D.   *Nonstatutory Motion to Vacate Void Judgment*

1.   *Standing*

The Assessor's motion to vacate was also directed to the inherent nonstatutory power of a court to set aside void judgments. His notice of motion alleged that "the stipulated judgment usurp[ed] the constitutional authority granted to the county board of equalization under Article XIII Section 16 of the California Constitution" and the judgment was invalid on its face because the court determined questions of fact the court had no jurisdiction to determine. In his memorandum of points and authorities, the assessor observed that a court has inherent power apart from statute to vacate a void judgment. He asserted the stipulated judgment was void on a number of grounds.

"A stranger to an action who is aggrieved by a void judgment may move to vacate the judgment, and on denial of the motion may have the validity of the judgment reviewed upon an appeal from the order denying the motion. (*Luckenbach* v. *Laer* [(1923)] 190 Cal. 395, 398 . . . ; 3 Witkin, Cal. Procedure (1954) p. 2177.)" (*Ryerson* v. *Riverside Cement Co.* (1968) 266 Cal.App.2d 789, 795 [72 Cal.Rptr. 595].) "[O]ne whose rights or interests are injuriously affected by any appealable order made in an action to which he is not a party, [may] through the process of making themselves parties . . . moving to set those orders aside. [Citation.] Their motions being denied, they may, on this appeal, have the proceedings of which they complain reviewed. [Citations.]" (*Luckenbach* v. *Laer* (1923) 190 Cal. 395, 398 [212 P. 918].) It has also been said: "[A] stranger may attack a void

judgment if some right or interest in him would be affected by its enforcement. [Citations.]" (*People* v. *Silva* (1981) 114 Cal.App.3d 538, 547 [170 Cal.Rptr. 713].)

The standing of a party to move to intervene by a motion to vacate is at least comparable to the standing of a party to bring a statutory motion to intervene as a matter of right. Code of Civil Procedure section 387 provides in pertinent part: "(a) Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. . . . [¶] (b) If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene." "While the interest [supporting intervention] is normally pecuniary, that is not an indispensable element. (*County of San Bernardino* v. *Harsh California Corp.* [(1959)] 52 Cal.2d 341 . . . ; *Baroldi* v. *Denni* [(1961)] 197 Cal.App.2d 472 . . . .)" (*People* ex rel. *Public Util. Com.* v. *Ryerson* (1966) 241 Cal.App.2d 115, 119 [50 Cal.Rptr. 246]; see *Simpson Redwood Co.* v. *State of California* (1987) 196 Cal.App.3d 1192, 1200-1201 [242 Cal.Rptr. 447]]; *People* ex rel. *Rominger* v. *County of Trinity* (1983) 147 Cal.App.3d 655, 661 [195 Cal.Rptr. 186]; cf. *California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 8-10 [270 Cal.Rptr. 796, 793 P.2d 2].)

In *County of San Bernardino* v. *Harsh California Corp.* (1959) 52 Cal.2d 341 [340 P.2d 617], the California Supreme Court concluded that the United States was entitled to intervene in an action by a county to recover unsecured personal property taxes from a taxpayer who operated a military housing project located on federally owned land which it leased from the United States even if the judgment would not directly and immediately affect the pecuniary interests of the United States: "The interest of the United States in sustaining its fiscal policy [defined by federal statute] by securing an adjudication of the validity and correct interpretation of its statute is fully sufficient to support its intervention whether or not the judgment will directly and immediately affect its pecuniary interests. [Citations.]" (*Id.* at pp. 345-346.) In addition, it has been recognized: " 'All public agencies have an "interest" which is "direct," in meeting their official responsibilities . . . .' [Citation.]" (*People* v. *Hy-Lond Enterprises, Inc., supra,* 93 Cal.App.3d at pp. 750-751.)

The Constitution mandates that the Legislature shall provide for an elected assessor in general law counties (Cal. Const., art. XI, § 1, subd. (b)) and that county charters shall provide for an elected assessor and the performance of functions required by statute.[10] (Cal. Const., art. XI, § 4, subds. (c) and (d).) It is the duty of the county assessor to prepare the local assessment roll (§ 601 et seq.) and to "assess all property subject to general property taxation at its full value." (§ 401; see §§ 110, 110.1, 110.5, 405; see also Cal. Const., art. XIII, § 1, art. XIII A, §§ 1, 2.)

County assessors are required to execute an affidavit on the completed local roll substantially as follows: " '. . . I have made diligent inquiry and examination to ascertain all the property within the county subject to assessment by me, and that it has been assessed on the roll, according to the best of my judgment, information, and belief, at its value as required by law; and that I have faithfully complied with all the duties imposed on the assessor under the revenue laws; and that I have not imposed any unjust or double assessment through malice, ill will, or otherwise; nor allowed anyone to escape a just and equal assessment through favor, reward, or otherwise.' " (§ 616.) "The assessor and his sureties are liable on his official bond for all taxes on property which is unassessed through his wilful failure or neglect." (§ 1361.)

A county assessor is required by statute to correct "any error or omission in the determination of a base year value pursuant to paragraph (2) of subdivision (a) of Section 110.1, . . . which does not involve the exercise of an assessor's judgment as to value" in any assessment year in which the error or omission is discovered. (§ 51.5, subd. (a).) A county assessor is also empowered to correct base-year values involving its exercise of judgment as to value within the provided time period. (§ 51.5, subd. (b).)

In enacting section 51.5, the Legislature found and declared: "[F]airness and equity require that county assessors have express authority to make

---

[10]The importance of a county assessor's independence is reflected in the fact it is an elected office. The Legislature has reinforced this independence by enacting Government Code section 31000.6. It provides: "Upon request of the assessor of the county, the board of supervisors shall contract with and employ legal counsel to assist the assessor in the performance of his duties in any case where the county counsel or the district attorney would have a conflict of interest in representing the assessor. [¶] In the event that the board of supervisors does not concur with the assessor that a conflict of interest exists, the assessor, after giving notice to the county counsel or the district attorney, may initiate an ex parte proceeding before the presiding judge of the superior court. The county counsel or district attorney may file an affidavit in such proceeding in opposition to, or in support of, the assessor's position. If the presiding judge determines that a conflict of interest does exist, the board of supervisors shall immediately employ legal counsel to assist the assessor."

corrections to property tax base-year values whenever it is discovered that a base-year value does not reflect applicable constitutional or statutory valuation standards or the base-year value was omitted. Any limitations imposed upon the assessor's authority to correct these errors would result in a system of taxation which, on the one hand, denies the benefits of Article XIII A of the California Constitution to some taxpayers where the barred error or correction would reduce the base-year value and, on the other hand, encourages even the most honest person to engage in deception and concealment in order to delay discovery of changes in ownership or new construction beyond the point where a correction of the base-year value can be made. Further, the failure to place any value on the assessment roll for property which completely escapes taxation because of limitations on the authority to correct errors would violate the constitutional requirement that all property in the state shall be subject to taxation. Nothing in this act violates either the spirit or the letter of Article XIII A of the California Constitution since all corrections permitted by it must be consistent with applicable constitutional and statutory valuation standards." (Stats. 1987, ch. 537, § 1(a), p. 1834.)

County assessors are generally required to participate in equalization hearings challenging any individual assessment. (§ 1610.2) At an equalization hearing, the board is bound by the same principles of valuation that are legally applicable to the assessor. (Cal. Code Regs., tit. 18, § 324; see Gov. Code, § 15606.)

In general, "[t]he law presumes that the assessor has properly performed his duty and has assessed all properties fairly and upon an equal basis." (Cal. Code Regs., tit. 18, § 321, subd. (a).) The taxpayer has the burden of proving otherwise and "[n]o greater relief may be granted than is justified by the evidence produced." (*Ibid.*) "The board acts in a judicial capacity and [can] act only on the basis of evidence." (Cal. Code Regs., tit. 18, § 302; see Gov. Code, § 15606.) An assessor may seek writ review of an adverse equalization decision. (See, e.g., *Shubat* v. *Sutter County Assessment Appeals Bd.* (1993) 13 Cal.App.4th 794 [17 Cal.Rptr.2d 1]; *Carlson* v. *Assessment Appeals Bd. I* (1985) 167 Cal.App.3d 1004 [213 Cal.Rptr. 555]; *County of San Diego* v. *Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548 [195 Cal.Rptr. 895].)

██ We conclude that the Assessor, in his official capacity, has a sufficient interest under our tax system to have standing to bring a motion to vacate a judgment on the ground it is void where the judgment revises the base-year value reached by the Assessor and reduces assessments on the local roll prepared by the Assessor.

## 2. *Timeliness*

██ "A judgment void on its face may be set aside on motion without any time limitation. (*Baird* v. *Smith* [(1932)] 216 Cal. 408, 410 . . . ; 3 Witkin, Cal. Procedure (1954) p. 2117.)" (*Ryerson* v. *Riverside Cement Co., supra,* 266 Cal.App.2d 789, 795; see *Estate of Estrem* (1940) 16 Cal.2d 563, 572 [107 P.2d 36]; see *Wettstein* v. *Cameto* (1964) 61 Cal.2d 838, 840 [40 Cal.Rptr. 705, 395 P.2d 665]; *People* v. *Davis* (1904) 143 Cal. 673, 675 [77 P. 651].) "It is well settled that a judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion, at any time after its entry, by the court which rendered the judgment or made the order. (*People* v. *Greene* [(1932)] 74 Cal. 400 . . . ; *People* v. *Temple* [(1894)] 103 Cal. [447] . . . .) Equally well settled is it that a judgment or order, which is in fact void for want of jurisdiction, but the invalidity of which does not appear from the judgment-roll or record, may be set aside on motion within a reasonable time after its entry, not exceeding the time limit prescribed by [former] section 473 of the Code of Civil Procedure; and an independent suit in equity to set aside the judgment or order is not necessary. (*Norton* v. *Atchison, etc., R. R. Co.* [(1893)] 97 Cal. 388 . . . ; *People* v. *Temple, supra*; *Smith* v. *Jones* [(1917)] 174 Cal. 513, . . . .) The motion, in such case, is not necessarily based upon [former] section 473; but in determining whether it is presented within a reasonable time, the period prescribed by [former] section 473 within which motions under it may be made is, as said in *Smith* v. *Jones, supra,* 'the standard or criterion in all cases.' " (*In re Dahnke* (1923) 64 Cal.App. 555, 560-561 [222 P. 381] [maximum of six months to move to vacate for lack of notice as statutorily required for appointment of a guardian]; see Code Civ. Proc., § 670 [judgment roll].)[11]

---

[11]At the time of *In re Dahnke*, Code of Civil Procedure section 473 permitted relief from a judgment taken through mistake, inadvertence, surprise, or excusable neglect provided that "application therefor be made within a reasonable time, but in no case exceeding six months after such judgment . . . was taken." (Stats. 1917, ch. 159, § 1, pp. 242-243.) In 1933, the Legislature amended the section and added in a fourth paragraph: "The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order." (Stats. 1933, ch. 744, § 34, pp. 1851-1852.) "The addition of paragraph 4 to section 473 in no way changed the then existing law. It merely gave express statutory recognition to an inherent power of the court. It in no way changed the period within which a motion to set aside the void judgment must be made." (*People* v. *One 1941 Chrysler Sedan* (1947) 81 Cal.App.2d 18, 22 [183 P.2d 368], disapproved on another ground in *People* v. *One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 303 [231 P.2d 832].) Some cases have held that the longer limitation period contained in Code of Civil Procedure section 473.5 (and predecessors) governs by analogy a motion for relief from a default judgment valid on its face but otherwise void because of improper service. (See *Rogers* v. *Silverman* (1989) 216 Cal.App.3d 1114, 1120-1126 [265 Cal.Rptr. 286]; *People* v. *Davis, supra,* 143 Cal. 673, 675.)

In this case, the assessor filed a notice of motion on January 3, 1997 (see Code Civ. Proc., § 1005.5), a date within six months after entry of judgment on July 30, 1996[12] (see Code Civ. Proc., §§ 668, 668.5). The trial court did not find that the motion to vacate was not brought within a reasonable time after its entry[13] and addressed the motion. The record does not demonstrate that the motion was untimely.[14]

### 3. *Void Judgments*

The County and Plaza Hollister both assert that a judgment is not void unless the court rendering the judgment lacked fundamental jurisdiction, i.e. personal or subject matter jurisdiction, and no one has suggested such jurisdiction is lacking here. They cite *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239 [284 Cal.Rptr. 18], which affirmed that a judgment may not be collaterally attacked as void where there is a mere mistaken application of the law. (*Id.* at p. 1268.) However, that case acknowledged that a judgment may be collaterally attacked "for lack of personal or subject matter jurisdiction or *for granting relief that the court had no power to grant . . . .*" (*Ibid.*, italics added.)

The granting of relief, which a court under no circumstances has any authority to grant, has been considered an aspect of fundamental jurisdiction for the purposes of declaring a judgment or order void. In *Grannis* v. *Superior Court* (1905) 146 Cal. 245 [79 P. 891], a plaintiff moved to set aside a final judgment of divorce, more than a year after the judgment, on

---

[12]The trial court signed and ordered entry of the stipulated judgment on July 15, 1996. The judgment was filed on July 19, 1996, and officially entered in the judgment book on July 30, 1996 (Code Civ. Proc., § 668).

[13]The Assessor declared in support of the motion that his office was never served with a copy of the stipulated judgment or notice of entry of judgment. He also indicated in his declaration that, after learning of the judgment and after numerous discussions with the county counsel, who had signed the stipulation and approved it as to form and content, he had sought authorization from the Board of Supervisors to obtain separate legal counsel to advise him regarding challenging the stipulated judgment, but his request was denied on October 8, 1996. (See Gov. Code, § 31000.6.)

[14]"It is well settled in this state that a court has no power to set aside on motion a judgment or order not void on its face unless the motion is made within a reasonable time, and it has been definitely determined that such time will not extend beyond the limited time fixed by section 473 of the Code of Civil Procedure as at present in force. [Citations.] However, to the rule just stated there is a well established exception which provides that although the judgment or order is valid on its face, if the party in favor of whom the judgment or order runs admits facts showing its invalidity, or, without objection on his part, evidence is admitted which clearly shows the existence of such facts, then it is the duty of the court to declare the judgment or order void." (*Thompson* v. *Cook* (1942) 20 Cal.2d 564, 569 [127 P.2d 909] [motion to set aside order, valid on face, after more than two years].) The respondents did not dispute the administrative record.

the ground that it was void because an interlocutory judgment should have been entered instead. (*Id.* at p. 246.) Observing that the law forbids the entry of a final divorce judgment until one year had expired after the entry of an interlocutory judgment, the court stated that the statutory provisions were "clearly to be understood as a limitation on the power of the court in the matter" and that the law would be effective only "by holding that any final judgment purporting to grant the divorce is absolutely void if thus prematurely entered." (*Id.* at p. 252.) The court recognized authority which provided: " 'If a court grants relief, which under no circumstances it has any authority to grant, its judgment is to that extent void.' [Citation.]" (*Id.* at p. 255.) The court concluded: "The judgment in question, being wholly void as a final judgment granting an immediate divorce, it was within the power of the superior court at any time, on motion of either party, or of its own motion, to declare it null, in so far as it purported to be of such effect. (*People* v. *Davis*, 143 Cal. 67[3]; *People* v. *Temple*, 103 Cal. 453.)" (*Id.* at p. 256 [denying petition for writ of prohibition to prevent court from acting on motion to vacate]; see *Michel* v. *Williams* (1936) 13 Cal.App.2d 198, 199, 201 [56 P.2d 546]; cf. *Carlson* v. *Eassa* (1997) 54 Cal.App.4th 684, 687-688, 691-692, 696-697 [62 Cal.Rptr.2d 884]; *Jones* v. *World Life Research Institute* (1976) 60 Cal.App.3d 836, 840, 848 [131 Cal.Rptr. 674]; cf. also *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 946, 950-951 [126 Cal.Rptr. 805, 544 P.2d 941].)

In *Burtnett* v. *King* (1949) 33 Cal.2d 805 [205 P.2d 657, 12 A.L.R.2d 333], a quiet title action, a former husband collaterally attacked a divorce decree, which had awarded all community property to his former wife in a divorce action following default in the absence of any request for such award. (*Id.* at p. 806.) The court stated: "It is equally clear that by reason of the mandatory language of the statute (the court cannot give a default judgment in excess of the demand), the court's jurisdiction to render default judgments can be exercised only in the way authorized by statute. It cannot act except in a particular manner, that is, by keeping the judgment within the bounds of the relief demanded." (*Id.* at p. 807, italics omitted) It concluded that "the court wholly lacked jurisdiction to render a judgment affecting the community property" and the judgment was to that extent void. (*Ibid.*)

In *Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715 [285 P.2d 636], the court explained: "It is the general rule that a final judgment or order is res judicata even though contrary to statute where the court has jurisdiction in the fundamental sense, i. e., of the subject matter and the parties. In the consideration of problems arising in this field it should be kept in mind that there is a difference between lack of jurisdiction in the

fundamental sense, which is ordinarily essential for collateral attack, and the broader meaning of the term 'lack of jurisdiction' when used in determining the availability of prohibition or certiorari to review an order or judgment." (*Id.* at p. 725.) However, the court recognized: "In some instances the requirements of a statute may relate to subject matter jurisdiction, and disregard of the statute may render a judgment void and subject to collateral attack. (See, for example, *Grannis* v. *Superior Court* [(1905)] 146 Cal. 245, 254-255 . . . ; cf. *Rogers* v. *Cady* [(1894)] 104 Cal. 288, 291-292 . . . [constitutional provision].)" (*Id.* at pp. 725-726.)

In *Becker* v. *S.P.V Construction Co.* (1980) 27 Cal.3d 489 [165 Cal.Rptr. 825, 612 P.2d 915], the defendants moved to vacate a default judgment on the ground that it exceeded the statutory authority under Code of Civil Procedure section 580. (27 Cal.3d at p. 492.) The Supreme Court found the trial court granted relief which it had no statutory power to grant when it rendered a default judgment awarding damages in excess of the amount requested in the complaint and attorney's fees which were not demanded and its judgment was to that extent void. (*Id.* at pp. 493-495.) The Supreme Court directed the trial court to strike the void portions of the judgment on remand. (*Id.* at p. 495.)

Accordingly, we proceed to examine whether the stipulated judgment is void in the sense it granted relief which the court under no circumstances had the power to grant in the exercise of its subject matter jurisdiction.

E.   *Exercise of Judgment as to Value of Property*

The California Constitution directly confers the power of equalization for a county on the county board of equalization: "The county board of supervisors, or . . . assessment appeals boards created by the county board of supervisors, shall constitute the county board of equalization" with the duty to "equalize the values of all property on the local assessment roll by adjusting individual assessments." (Cal. Const., art. XIII, § 16; see Gov. Code, § 25202.) The procedures for assessment appeals and equalization of individual assessments are statutorily provided. (§§ 80 et seq. and 1601 et seq.)

"That article XIII sections 9 and 9.5 [now section 16] confer adjudicative powers on local boards of equalization and assessment appeals boards can scarcely be gainsaid." (*Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163, 176 [116 Cal.Rptr. 160]. "It must be conceded, of course, that it is well settled in this state that to the authorized county board of equalization has been confided the duty of determining 'the

value of the property under consideration for assessment purposes upon such basis as is used in regard to other property, so as to make all the assessments as equal and fair as is practicable' . . . ." (*Universal Cons. Oil Co. v. Byram* (1944) 25 Cal.2d 353, 356 [153 P.2d 746].) "Accordingly, 'while sitting as a board of equalization, the county board of supervisors is a constitutional agency exercising quasi-judicial powers delegated to the agency by the Constitution' (*Westlake Farms, Inc. v. County of Kings* (1974) 39 Cal.App.3d 179, 185 . . .) with 'special expertise in property valuation.' (*Westinghouse Elec. Corp. v. County of Los Angeles* (1974) 42 Cal.App.3d 32, 42, fn. 6 . . . .)" (*Shell Western E & P, Inc. v. County of Lake* (1990) 224 Cal.App.3d 974, 979 [274 Cal.Rptr. 313].)

The county boards of equalization, rather than the courts, are the proper tribunal for exercising judgment on valuation questions concerning individual assessments on the local roll. (See *Universal Cons. Oil Co. v. Byram, supra,* 25 Cal.2d at pp. 362-363; see also *Los Angeles Gas & Electric Co. v. County of Los Angeles* (1912) 162 Cal. 164, 168-169 [121 P. 384, 9 A.L.R. 1277]; *La Grange Hydraulic Gold Mining Co. v. Carter* (1904) 142 Cal. 560, 565 [76 P. 241].) "[T]he respective county board of equalization is the fact-finding body designated by law to remedy excessive assessments ([former] Cal. Const., art. XIII, § 9) . . . ."[15] (*Universal Cons. Oil Co. v. Byram, supra,* 25 Cal.2d 353, 362.) "It is essential to the performance of governmental functions that an orderly system of assessment and collection of taxes shall be maintained, and that the amounts of the assessments be fixed with certainty in a prescribed manner. The prevailing statutory scheme in this state on equalization matters provides for a method of reviewing the values fixed by the assessor and a tribunal to pass upon any claims of overvaluation. ([Former] Rev. & Tax Code, § 1601 et seq.)" (*Universal Cons. Oil Co. v. Byram, supra,* 25 Cal.2d at p. 362.) Thus, a county board of equalization's erroneous failure to act upon taxpayers' application for reduced valuation did not "sanction the court's undertaking to resolve the conflicting issues of fact bearing upon the taxable value" (*ibid.*) and the matter had to be remanded to the board for a determination of value (*id.* at pp. 362-363).

---

[15]"Early statements that factual findings made by local boards are 'final and conclusive' (*Universal Cons. Oil Co. v. Byram* (1944) 25 Cal.2d 353, 362 . . . ; accord *Flying Tiger Line, Inc. v. County of L. A.* (1958) 51 Cal.2d 314, 321-322 . . .) have been supplanted by the substantial evidence test that tolerates a very limited reweighing of the evidence heard by the local board. (See *Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 22-23 . . . ; *County of San Diego v. Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 554-555 . . . .) [¶] On the other hand, courts are authorized to conduct an independent reassessment 'when a board of equalization purports to decide a question of law.' (*Board of Supervisors v. Archer* (1971) 18 Cal.App.3d 717, 724 . . . ; accord *Georgia-Pacific Corp. v. County of Butte* (1974) 37 Cal.App.3d 461, 474 . . . .)". (*Shell Western E & P, Inc. v. County of Lake, supra,* 224 Cal.App.3d 974, 980.)

This constitutional grant of authority to the county boards of equalization is reflected in the scope of judicial review of equalization determinations. "If the [taxpayer] claims only that the assessor and the Board of Equalization erroneously applied a valid method of determining full cash value, the decision of the board is equivalent to the determination of a trial court, and the trial court in turn may review only the record presented to the board. [Citations.] The trial court may overturn the board's decision only when no substantial evidence supports it, in which case the actions of the board are deemed so arbitrary as to constitute a deprivation of property without due process. [Citations.]" (*Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354].)

"On the other hand, when the taxpayer challenges the validity of the valuation method itself, the trial judge is faced with a question of law. [Citations.] That question, stated in terms of the more modern authorities discussed above, is whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law." (16 Cal.3d at p. 23.)

■ Accordingly, when reviewing an equalization determination properly before it in a refund action, a court may correct an assessment and grant a tax refund if value is calculable as a matter of law without remanding to the county board of equalization. (See, e.g., *Phillips Petroleum Co.* v. *County of Lake* (1993) 15 Cal.App.4th 180, 187-188 [18 Cal.Rptr.2d 765] [taxpayer did not dispute assessment based on change in ownership but claimed assessor failed to assign a base-year value and challenged assessments in subsequent years]; cf. *Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d 14, 19, 25-26 [assessor's method of valuation on escape assessment legally incorrect and uncontradicted evidence established that full cash value was even less than original assessments]; *Flying Tiger Line, Inc.* v. *County of L. A.* (1958) 51 Cal.2d 314, 316 [333 P.2d 323] [alternative method of valuation and facts not disputed]; *Parr-Richmond Industrial Corp.* v. *Boyd* (1954) 43 Cal.2d 157, 168-169 [272 P.2d 16] [accepted mathematical formula applied to valuation].)

However, where a judgment must still be exercised as to value, a remand to the local board of equalization is required.[16] (See *Service America Corp.* v. *County of San Diego* (1993) 15 Cal.App.4th 1232 [19 Cal.Rptr.2d 165]

---

[16]Since remand is the return of a matter to the tribunal previously exercising jurisdiction, we query whether an assessment not previously before a county board of equalization may be sent back to it. (But see *Star-Kist Foods, Inc.* v. *Quinn* (1960) 54 Cal.2d 507, 511 [6 Cal.Rptr. 545, 354 P.2d 1].)

[improper valuation method]; *Borel* v. *County of Contra Costa* (1990) 220 Cal.App.3d 521 [269 Cal.Rptr. 460] [improper valuation method]; *Norby Lumber Co.* v. *County of Madera* (1988) 202 Cal.App.3d 1352, 1363-1367 [249 Cal.Rptr. 646] [improper valuation method; trial court erred in rendering judgment for refund of taxes]; *Prudential Ins. Co.* v. *City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1161-1162 [236 Cal.Rptr. 869] [failure to discount nominal sales price to its cash equivalent value]; *Kaiser Center, Inc.* v. *Alameda County* (1987) 189 Cal.App.3d 978, 982-984 [234 Cal.Rptr. 603] [value set by the board not supported by substantial evidence; trial court properly remanded to the county board of assessment appeals for resolution of valuation issue]; *Georgia-Pacific Corp.* v. *County of Butte* (1974) 37 Cal.App.3d 461, 477-478 [112 Cal.Rptr. 327] [unconstitutional method of valuation]; *Simms* v. *Los Angeles* (1950) 35 Cal.2d 303, 318 [217 P.2d 936] [discriminatory taxes].) "If the board has used an improper method of value or has failed to use proper criteria in valuing the property and there is no evidence or there is a conflict in the evidence from which a proper value can or should be made, the trial court must remand the matter to the board for further proceedings. [Citations.] The constitutional responsibility to assess property falls to the local board of equalization and not to the courts. In resolving disputed factual issues, the trial court impermissibly shifts the ultimate equalization responsibility from the local board of equalization to the superior court. [Citation.]" (*Norby Lumber Co.* v. *County of Madera, supra,* 202 Cal.App.3d at p. 1366.)

In *Prudential Ins. Co.* v. *City and County of San Francisco, supra,* 191 Cal.App.3d 1142, an appellate court held that, in determining the assessed value of hotel property which the taxpayer purchased by paying cash and assuming a loan, an assessor was required by law to discount the assumed loan to its cash equivalent value. (*Id.* at pp. 1146, 1148-1156.) However, the court also determined that the judgment improperly awarded a refund for taxes paid and a remand was necessary to allow the assessment appeals board to consider the proper application of cash equivalent analysis. (*Id.* at pp. 1161-1162.) We think that case is most closely analogous to the situation here.

At the equalization hearing, Plaza Hollister proposed a number of base-year values, each purportedly involving application of cash equivalent analysis. None of the proposed values were adopted in the stipulated judgment. The County asserts that "[t]he variable producing the range of values is the application of the legal doctrine of cash equivalency and application of mathematical calculation" and suggests that the trial court could properly approve any taxable value within the range of values developed at the assessment appeals hearing.

We are unable to accept the County's position. Although Plaza Hollister is challenging the validity of the Assessor's valuation methodology in this action, the question of value appears to require a further exercise of judgment. Plaza Hollister and the County have not shown this court that the base-year value is calculable as a matter of law based on a fixed mathematical formula. Furthermore, "[c]onversion of a sale price to its cash equivalent value does not necessarily represent the property's market value; rather it is only a first step in arriving at market value. [Citation.] Further adjustments may be necessary . . . ." (*Prudential Ins. Co.* v. *City and County of San Francisco, supra,* 191 Cal.App.3d at pp. 1155-1156.)

As in *Prudential Ins. Co.* v. *City and County of San Francisco, supra,* 191 Cal.App.3d 1142, remand is necessary to allow the Board of Equalization, in keeping with its constitutional charge, to determine value. Thus, to the extent the stipulated judgment represents an exercise of judgment as to value, the trial court improperly invaded the constitutional authority of the Board of Equalization and granted relief which the court had no authority to grant under any circumstances.

The Board of Supervisors, acting on behalf of the County and Plaza Hollister, could not confer jurisdiction upon the court to equalize individual assessments. (See *Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668]; *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 776 [197 P.2d 739], disapproved on another ground *Robinson* v. *Superior Court* (1950) 35 Cal.2d 379, 385 [218 P.2d 10].) The fact that the Board of Supervisors constituted the Board of Equalization is irrelevant since the Board of Supervisors was not acting as a county board of equalization when it entered into the stipulation on behalf of the County.

F. *Assessment Appeals*

Section 80 et seq. governs assessment appeals challenging the base-year value for an assessment. Generally, the applicant in equalization proceedings (§ 1601 et seq.) may establish the correct base-year value applicable to a current year's assessment subject to the limitations of section 80. (§ 81.)

The Assessor asserts that the conclusive presumption regarding base-year value stated in section 80, subdivision (a)(3), means that "once Plaza Hollister filed its application for a reduced assessment for the 1986-87 year, and once the County Board of Equalization denied that application and upheld Assessor's 1985-86 base-year assessment, that base-year assessment became conclusive and could not be challenged by Plaza Hollister in any

subsequent proceeding however brought." The Assessor insists that, even if this court should conclude that an assessment appeal determination of base-year value could be properly reviewed on a refund claim or refund action, section 80, subdivision (a)(5), precludes a changed assessment based on a retroactive reduction in base-year value for the 1985-1986 fiscal year.

The County maintains that the conclusive presumption established by section 80, subdivision (a)(3), does not prevent a claim for refund or a refund action and the attendant review of an equalization determination on an application for a reduction in an assessment. Plaza Hollister makes a similar argument and asserts that Assessor's interpretation of section 80, subdivision (a)(3), would leave the taxpayer without any remedy and render sections 5097 (claim for refund) and 5141 (refund action) meaningless. It contends that the power to correct improper assessments is implicit in the authority to grant refunds and the conclusive presumption does not operate until there is a final judicial determination regarding a challenged base-year value.

Section 80, subdivision (a)(3), provides: "The base-year value determined pursuant to paragraph (2) of subdivision (a) of Section 110.1 shall be conclusively presumed to be the base-year value, unless an application for equalization is filed during the regular equalization period for the year in which the assessment is placed on the assessment roll or in any of the three succeeding years. Once an application is filed, the base-year value determined pursuant to that application shall be conclusively presumed to be the base-year value for that assessment." Section 80, subdivision (a)(5), states: "Any reduction in assessment made as the result of an appeal under this section shall apply for the assessment year in which the appeal is taken and prospectively thereafter." Section 80 was intended to apply to the determination of base-year values for the 1979-1980 assessment year and thereafter. (Stats. 1979, ch. 242, § 41, p. 526; see § 118.)

The statutory language of section 80, subdivision (a)(3), plainly creates conclusive presumptions and does not itself bar refund claims or refund actions. A conclusive presumption is an evidentiary concept, which means that once foundational facts upon which such a presumption is based are established, the assumed fact may not be controverted by contrary evidence. (See Evid. Code, §§ 600, 601, Fam. Code, § 7540.) Misapplication of an evidentiary rule in an action is merely an error of substantive law which does render a judgment void for lack of jurisdiction. (See *Adoption of Matthew B.*, *supra*, 232 Cal.App.3d 1239, 1268; *In re Marriage of Mansell* (1989) 217 Cal.App.3d 219, 229-230 [265 Cal.Rptr. 227].) Consequently, section 80,

subdivision (a)(3), is not a ground to vacate the stipulated judgment as void and this court need not determine its precise operation at this time.[17]

Section 80, subdivision (a)(5), requires corrections of a base-year value through the assessment appeal process to be made only prospectively. The County acknowledges that in *Osco Drug, Inc.* v. *County of Orange* (1990) 221 Cal.App.3d 189 [272 Cal.Rptr. 14], which was a tax refund action, the court concluded that, under section 80, subdivision (a)(5), any "reduction in base-year value [as a result of an assessment appeal] shall apply for the assessment year in which the appeal is taken and prospectively thereafter." (221 Cal.App.3d at p. 194, fn. omitted.) The court observed that "[a]s the deadline for filing an application for assessment reduction passed each year, [the taxpayer] was precluded from receiving a refund of taxes paid in that year because any reduction to base-year value [as a result of an assessment appeal] could not be applied retroactively to a prior year's assessment." (*Id.* at p. 196, fn. 13.)

Despite that case, the County proposes that section 80, subdivision (a)(5), cannot be applied to prevent a refund in assessment years prior to an assessment appeal because article XIII A, section 2, of the California Constitution is self-executing. This contention is not persuasive.

■ " 'A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced.' [Citations.]" (*Chesney* v. *Byram* (1940) 15 Cal.2d 460, 462 [101 P.2d 1106].) Notwithstanding the fact that a particular provision may be self-executing, reasonable legislation enacted to facilitate its operation is valid. (*Id.* at pp 463-464.) "It has been uniformly held that the legislature has the power to enact statutes providing for reasonable regulation and control of rights granted under constitutional provisions. [Citations.]" (*Chesney* v. *Byram, supra,* 15 Cal.2d at p. 465; see *City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 112-113 [148 Cal.Rptr. 626, 583 P.2d 151] [California Legislature is not limited to express grants of power under California Constitution]; see also *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 246 [149 Cal.Rptr. 239, 583 P.2d 1281] [legislation is traditionally accorded great weight in construing constitutional enactments such as California Constitution, article XIII A].)

---

[17]However, we do note that there is not any indication in the language of section 80 or in its legislative history that the Legislature intended to make an assessment appeal decision regarding base-year value completely unreviewable by the courts. If the conclusive presumption operates in a refund claim or refund action, it may be that an extraordinary remedy must be sought to avoid an adverse assessment appeal decision regarding base-year value. (Cf. *County of Sacramento* v. *Assessment Appeals Bd. No. 2* (1973) 32 Cal.App.3d 654, 673 [108 Cal.Rptr. 434]; *Birch* v. *Board of Supervisors* (1923) 191 Cal. 235, 238 [215 P. 903].)

The County also suggests that an assessment appeal is an administrative remedy and the taxpayer's failure to exhaust that remedy may be waived by the County regardless of section 80, subdivision (a)(5), citing *Green v. City of Oceanside* (1987) 194 Cal.App.3d 212 [239 Cal.Rptr. 470]. In that case, the court held, in the context of an employment dispute, that a city could and did waive the defense of failure to exhaust administrative remedies because the doctrine of exhaustion was merely a procedural prerequisite and not an element of fundamental subject matter jurisdiction. (*Id.* at pp. 219-223.)

The *Green* court's holding was followed in *Mission Housing Development Co. v. City and County of San Francisco* (1997) 59 Cal.App.4th 55 [69 Cal.Rptr.2d 185], a tax refund action. There, the City and County of San Francisco argued that the taxpayers' failures to file valid applications for reduction of an assessment and to file properly verified claims for a tax refund were failures to exhaust administrative remedies. (*Id.* at p. 66.) The appellate court held that the "defense of failure to exhaust administrative remedies may be waived if not properly or timely raised" (*id.* at p. 67) and concluded the government waived that defense as to the alleged "fail[ure] to file *valid* applications for reassessment" (*id.* at p. 68).

The doctrine of exhaustion of administrative remedies provides that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].) "The doctrine of exhaustion of administrative remedies was evolved by the courts to promote comity between coequal branches of government and to relieve overburdened courts from the need to deal with cases where effective administrative remedies are available. (*Bozaich v. State of California* (1973) 32 Cal.App.3d 688, 698 . . . .)" (*Patane v. Kiddoo* (1985) 167 Cal.App.3d 1207, 1214 [214 Cal.Rptr. 9].) The doctrine prevents interference with the subject matter jurisdiction of another tribunal where an administrative tribunal was created by law to adjudicate the issue sought to be presented to the court and claim is within the special jurisdiction of the administrative tribunal. (See *Rojo v. Kliger* (1990) 52 Cal.3d 65, 85 [276 Cal.Rptr. 130, 801 P.2d 373].) The doctrine presupposes that an administrative authority and a court both have jurisdiction over a matter.

The doctrine "is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis,* and binding upon all courts." (*Abelleira v. District Court of Appeal, supra,* 17 Cal.2d at p. 293.)

"[E]xhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts" for purposes of determining right to restraint by writ of prohibition. (*Ibid.*)

As the court in *Green* v. *City of Oceanside, supra,* 194 Cal.App.3d 212, astutely observed, "[t]he association of the exhaustion doctrine with the 'jurisdiction' of the superior court has led to some confusion. At least one court assumed that jurisdiction in this context refers to subject matter jurisdiction and, relying on the venerable rule [that subject matter jurisdiction may not be waived by a party or conferred on the court by consent] [citation], concluded that the failure to exhaust administrative remedies 'may be challenged at any stage of the proceeding.' [Citations.]" (*Id.* at p. 220.) The *Green* court rejected the notion that the exhaustion doctrine affected the fundamental subject matter jurisdiction of the court: "*Abelleira* makes it abundantly clear that the exhaustion doctrine does *not* implicate subject matter jurisdiction but rather is a 'procedural prerequisite' originally devised for convenience and efficiency' and now 'followed under the doctrine of *stare decisis,* . . .' (*Id.* at pp. 288, 291.) It is 'jurisdictional' only in the sense that a court's failure to apply the rule in a situation where the issue has been properly raised can be corrected by the issuance of a writ of prohibition." (*Id.* at p. 222, italics in original.)

The court in *Mission Housing Development Co.* v. *City and County of San Francisco, supra,* 59 Cal.App.4th 55, found the reasoning in *Green* persuasive and applied its holding without further analysis to the taxpayers' failure to file valid applications for reduction in assessment. (*Id.* at pp. 67-68.) We disagree with *Mission Housing Development Co.* to the extent it implies that a court may have jurisdiction to equalize an overassessment where a taxpayer's failure to file an equalization application for reduction of an alleged overassessment is not timely or properly raised.

Early California cases required taxpayers to seek relief from local boards of equalization as a precondition to judicial review of alleged overassessments involving valuation questions. In *Luce* v. *City of San Diego* (1926) 198 Cal. 405 [245 P. 196], the Supreme Court explained: "In the early case of *Fall* v. *Marysville* [(1861)] 19 Cal. 391, it was held by this court that an objection to a tax assessment which did not go to the validity of the tax itself but simply as to its amount must be made to the proper tribunal for reduction before an action would lie to restrain the collection of such a tax. In the case of *Henne* v. *Los Angeles County* [(1900)] 129 Cal. 297 . . . , the foregoing doctrine was extended so as to be given application to an assessment of property which was not assessable, as in that case to the imposition of a tax

upon a mortgage held by the University of California and taxed against the owner of the property in question. In the later case, however, of *Brenner* v. *Los Angeles* [(1911)] 160 Cal. 72 . . . , this court drew the distinction between the wrongful assessment of property not subject to taxation and the wrongful valuation of taxable property, and to the extent only of an attempted assessment of nontaxable property overruled its former decision in the case of *Henne* v. *Los Angeles County, supra*; but otherwise indicated that the rule laid down in the earlier cases above referred to was to be upheld in its application to an unequal assessment of taxable properties. We are entirely satisfied that the rule as thus limited has full application to such cases as are presented upon the present appeals and that in the absence of a showing that the complaining property owners have made due application to the city board of equalization for relief from the arbitrary and unequal valuations of the assessor the plaintiffs herein were not entitled to a recovery of the taxes paid, even though they had in each case made such payment under protest as provided in [former] section 3819 et seq. of the Political Code." (*Luce* v. *City of San Diego, supra*, 198 Cal. at pp. 406-407.)

In *Montgomery Ward & Co.* v. *Welch* (1936) 17 Cal.App.2d 127 [61 P.2d 790], an action for declaratory relief to determine the correct assessment of allegedly overassessed property, the court recognized: "[I]n cases of mere overvaluation of property, relief is to be obtained by making timely objection before the board of supervisors sitting as a board of equalization. [Citations.]" (*Id.* at p. 131.) It stated: "The case before us is purely that of a claimed overvaluation of the property and is not one of a double, erroneous or illegal assessment which is entirely void. Assuming that the assessment of property at nearly four times its actual value may be so inequitable as to constitute a constructive fraud it does not follow that such an assessment may be attacked at any time and in any place. It is essential to the performance of governmental functions that an orderly system of assessment and collection of taxes shall be maintained, and that the amounts of the assessments be fixed with certainty in a prescribed manner and at a definite time. Our system provides a method of reviewing the values fixed by the assessor and a tribunal to pass upon any claims of overvaluation. If that tribunal fails to properly discharge its duty the courts may intervene, but a different situation is presented where a taxpayer fails to avail himself of the machinery provided and fails to make timely application to and make proof of his contentions before the board of equalization. Under the statutes and the authorities above referred to we conclude that an application for relief to the board of equalization is a necessary prerequisite to the maintenance of such an action as this, and that the complaint filed by the appellant failed to state a cause of action." (*Id.* at pp. 133-134.)

In *Dawson* v. *County of Los Angeles* (1940) 15 Cal.2d 77 [98 P.2d 495], the California Supreme Court affirmed a judgment following a demurrer sustained without leave to amend in an action to recover taxes, stating: "[W]e are of the view that plaintiff having failed to object to the assessment before the board of supervisors sitting as a board of equalization is not now in a position to challenge it. When read in conjunction with the companion case of *Mahoney* v. *City of San Diego* [(1926)] 198 Cal. 388, 391 . . . , the case of *Luce* v. *City of San Diego*, 198 Cal. 405, 406, 407 . . . , is authority for the proposition that when the asserted error complained of is an error of assessment, as here, resort must first be had to the board of equalization and in the absence of objection there the taxpayer is precluded from obtaining a refund, and this even though, as here, the alleged error was the result of an asserted uniformly excessive assessment upon all property of the same class." (*Id.* at p. 81.)

Later cases strictly applied the doctrine of exhaustion of administrative remedies against taxpayers in property tax matters without any discussion of waiver. (See, e.g., *McHugh* v. *County of Santa Cruz* (1973) 33 Cal.App.3d 533 [109 Cal.Rptr. 149] [taxpayer failed to seek reduction in assessment in each assessment year]; *Stenocord Corp.* v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966] [taxpayer failed to seek review, equalization, and adjustment by the local board of equalization]; *Security-First Nat. Bk.* v. *County of L.A.* (1950) 35 Cal.2d 319, 320-321 [217 P.2d 946] [taxpayer failed to apply to the local board of equalization for correction of the assertedly erroneous assessment]; cf. *Star-Kist Foods, Inc.* v. *Quinn, supra,* 54 Cal.2d 507, 510 [no question of valuation]; *City & Co. of S.F.* v. *County of San Mateo* (1950) 36 Cal.2d 196, 201 [222 P.2d 860] ["problem of 'equalization and adjustment' confided by the Constitution to the State Board of Equalization"].)

As explained by the California Supreme Court: "Ordinarily a taxpayer seeking relief from an erroneous assessment must exhaust available administrative remedies before resorting to the courts. [Citations.] An exception is made when the assessment is a nullity as a matter of law because, for example, the property is tax exempt, nonexistent or outside the jurisdiction [citations], and no factual questions exist regarding the valuation of the property which, upon review by the board of equalization, might be resolved in the taxpayer's favor, thereby making further litigation unnecessary [citations]." (*Stenocord Corp.* v. *City etc. of San Francisco, supra,* 2 Cal.3d 984, 987.)

"The fact that the assessor erroneously overvalues property which is otherwise subject to tax does not render the assessment a nullity under the

foregoing rule, for disputes regarding valuation are within the special competence of the board of equalization. [Citations.] If any question of valuation exists, it would be irrelevant that plaintiff also challenges the assessment as 'arbitrary' or void on constitutional grounds. [Citations.]" (2 Cal.3d at p. 988.) "[A] claim for refund is an adequate substitute for a request for equalization only in those cases wherein the assessment is totally void as an attempt to tax property not subject to taxation, rather than merely an inaccurate assessment of the value of taxable property. [Citations.]" (*Id.* at p. 990.)

It is only relatively more recently, beginning with *Green,* that some courts have held that the doctrine of exhaustion of administrative remedies is merely an affirmative defense which may be waived.[18] ██ Even if failure to exhaust administrative remedies is not a matter of fundamental subject matter jurisdiction, *Mission Housing Development Co.* overlooks a critical fact, namely that county boards of equalization, not the courts, are the tribunals vested by California's Constitution with the authority to equalize local assessments. Consequently, we conclude that doctrine and its application may not be invoked to somehow confer authority upon a court to exercise judgment as to value and equalize an individual assessment.

██ Furthermore, the Legislature has established the procedures by which a taxpayer may seek equalization and apply for reduction in base-year value and in an individual assessment. A taxpayer who challenges a local assessment, correction of which requires resolution of a valuation question, must address its claim to the proper tribunal as statutorily provided subject to the applicable statutory limitations. Taxpayers who skip this step in the belief that an overassessment involves a pure question of law which may be raised in a refund action do so at their own peril. The respondents have not established any legal basis for avoiding the plain limitation stated in section 80, subdivision (a)(5).

Although the trial court had subject matter jurisdiction over a tax refund action and even assuming the trial court could, by virtue of such action, review an assessment appeal determination regarding base-year value, the court had no authority under any circumstances to retroactively apply a reduction in base-year value resulting from the assessment appeal to assessment years predating the assessment appeal. Consequently, the stipulated judgment is to that extent void.

---

[18]There is a split of authority on this issue. (See *Hood* v. *Hacienda La Puente Unified School Dist.* (1998) 65 Cal.App.4th 435, 441 [76 Cal.Rptr.2d 448] and cases therein cited.) The dissent in *Green* v. *City of Oceanside, supra,* 194 Cal.App.3d 212, believed that *Abelleira* announced a rule of fundamental subject matter jurisdiction, which was based on the separation of powers of the judicial and executive branches of government and could not be waived. (*Id.* at pp. 232-234.)

### G.  *Statutory Refund Process*

The Assessor argues on appeal that Plaza Hollister did not file claims for refunds for each payment sought to be refunded as statutorily required and the trial court had no authority to order a refund for those tax payments for which a claim was not timely filed. Plaza Hollister argues that it was not required to file a claim refund for each payment because "the recalculation of the base year automatically changes the roll value for subsequent years" and it would then be entitled to "automatic refunds for those succeeding years." The County asserts that the procedures required by section 5097 are irrelevant to the propriety of an action under section 5141. We find the respondent's contentions untenable and agree with the Assessor.

A comprehensive statutory refund process for recovering property tax payments has been provided for taxpayers, including those whose property has been overassessed as determined by a county board of equalization pursuant to section 1613 (§ 5096, subd. (f)) or whose property has been illegally assessed (§ 5096, subd. (c)).[19] (§§ 5096 et seq., 5140 et seq.) The process of obtaining a refund is distinct from the process of seeking a reduced assessment by filing an application for equalization.[20] (§§ 1601 et seq. and 5096 et seq.; see *Osco Drug, Inc.* v. *County of Orange, supra,* 221 Cal.App.3d at pp. 193, 196, fn. 13.)

An administrative claim for refund must be timely filed within the period statutorily prescribed. (§ 5097.) In this case, a claim had to be filed "within four years after making of the payment sought to be refunded." (§ 5097, subd. (a).) The grounds for a refund claim are statutorily limited to those provided. (§ 5096; cf. § 5097.2.)

The timely filing of a proper claim for refund is a statutory prerequisite to a refund action: "No action shall be commenced or maintained under this

---

[19]Section 5096 states: "Any taxes paid before or after delinquency shall be refunded if they were: [¶] (a) Paid more than once. [¶] (b) Erroneously or illegally collected. [¶] (c) Illegally assessed or levied. [¶] (d) Paid on an assessment in excess of the ratio of assessed value to the full value of the property as provided in Section 401 by reason of the assessor's clerical error or excessive or improper assessments attributable to erroneous property information supplied by the assessee. [¶] (e) Paid on an assessment of improvements when the improvements did not exist on the lien date. [¶] (f) Paid on an assessment in excess of the equalized value of the property as determined pursuant to Section 1613 by the county board of equalization. [¶] (g) Paid on an assessment in excess of the value of the property as determined by the assessor pursuant to Section 469."

[20]However, an application for a reduction in an assessment filed pursuant to section 1603 serves as claim for refund under section 5097 if "the applicant states in the application that the application is intended to constitute a claim for refund." (§ 5097, subd. (b).)

article, except under Section 5148, unless a claim for refund has first been filed pursuant to Article 1 (commencing with Section 5096)." (§ 5142, subd. (a); see § 5148 [state-assessed property].) "No recovery shall be allowed in any refund action upon any ground not specified in the refund claim." (*Ibid.*) Section 5142 now makes clear that "[t]he filing of, and the acceptance by the [county] board [of equalization] of, a stipulation under this subdivision [regarding the absence of valuation issues] shall not excuse or waive the requirement of· a timely filing of a claim for refund." (§ 5142, subd. (b).)

██ "Our analysis commences with the premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citation.] ' "Our first step [in determining legislative intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning." ' [Citations.] "'In analyzing statutory language, we seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose . . . ." ' [Citation.] 'Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction.' [Citations.]" (*Hughes* v. *Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

██ Statutorily prescribed prerequisites to statutory causes of action have been held jurisdictional and the failure to satisfy such preconditions has been held fatal to the action. (Cf. *Shiseido Cosmetics (America) Ltd.* v. *Franchise Tax Bd.* (1991) 235 Cal.App.3d 478, 486-496 [286 Cal.Rptr. 690] [administrative claim for refund of state franchise tax is jurisdictional prerequisite to a franchise tax refund action]; *Rojo* v. *Kliger, supra,* 52 Cal.3d 65, 83 [exhaustion of FEHA administrative remedies is a statutory prerequisite to statutory cause of action]; *Patane* v. *Kiddoo, supra,* 167 Cal.App.3d 1207, 1213-1214 [appeal to Unemployment Insurance Appeals Board from denial of refund claim is statutory prerequisite to employer's action for refund of unemployment insurance contributions].) In regards to a tax refund action under section 5141 et seq., the Legislature has expressly and plainly prescribed the procedural prerequisite of filing a timely claim for refund. We think this requirement must be viewed as a precondition to the court's exercise of jurisdiction given the unambiguous statutory language. Any other reading would be unreasonable and contravene legislative intent.

Nevertheless, Plaza Hollister suggests that failure to file a claim for refund may be viewed as a failure to exhaust administrative remedies, a defense which it alleges the County waived by entering the stipulation. Our response is that the judicially developed doctrine of exhaustion of administrative remedies is distinct from statutorily prescribed jurisdictional prerequisites to

statutory causes of action. Where the Legislature has imposed such jurisdictional prerequisites but those preconditions have not been met, a court is without power to grant relief.

In this case, it appears Plaza Hollister did not file a claim for refund for each tax payment sought to be recovered. The trial court had no power to grant relief as to any tax payment for which there was not a timely claim for refund and to that extent its judgment is void.

In view of our conclusions, we do not decide the remaining issues.

The order denying the motion to vacate is reversed and the trial court is directed to vacate the stipulated judgment upon remand. Each party shall bear its own costs.

Premo, Acting P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied June 11, 1999, and the petition of respondent Plaza Hollister Limited Partnership for review by the Supreme Court was denied August 18, 1999.