Filed 9/2/25  Koehler v. Prinz CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROBERT F. KOEHLER, JR., | C101899 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2019-00269261-CU-MC-GDS) |
| v. | |
| DREW PRINZ et al., | |
| Defendants and Respondents. | |

In prior litigation, plaintiff Robert Koehler, an attorney, represented defendants Elizabeth and Drew Prinz (collectively, the Prinzes) in an action against the Campus Commons Homeowners Association (the HOA) and its property manager.  The Prinzes received a compensatory damages settlement of $305,000.  Of that amount, Koehler received $109,374 as a contingency fee.  The Prinzes were subsequently awarded approximately $412,000 in attorney fees and costs as the prevailing parties on the HOA's cross-complaint.  When a disagreement arose between the Prinzes and Koehler as to their respective interests in this attorney fee award, Koehler filed this action for declaratory relief against the Prinzes, and the Prinzes cross-complained for damages and other relief.

1

After a bench trial, the trial court partially granted judgment in favor of Koehler on his declaratory relief cause of action, concluding that the attorney fee award belonged to him *to the extent it exceeded the amount already paid to Koehler as a contingency fee*. However, because Koehler improperly took and retained the *entire* attorney fee award, the court entered judgment in favor of the Prinzes on causes of action for financial elder abuse, conversion, breach of fiduciary duty, and negligence in the amount of $109,374, the amount of the contingency fee. Both parties appealed, and another panel of this court affirmed in all respects.

Following remittitur, Koehler moved in the trial court to vacate the judgment. He expressly argued that the judgment was void and voidable. The trial court denied the motion. The court concluded that there was nothing in the judgment roll to indicate that the judgment was void on its face, that Koehler was in fact arguing that the judgment was voidable because the court acted in excess of its jurisdiction, and that a motion to vacate the judgment as voidable was time-barred.

Representing himself on appeal, Koehler raises seven issues in his opening brief, with numerous subissues, and urges us to find the judgment void on its face. Having reviewed these arguments, we conclude that Koehler has not demonstrated that the judgment was void on its face, and therefore, the trial court did not err in denying his motion to vacate the judgment. We will affirm. We also deny the Prinzes' request that we take judicial notice of certain matters related to Koehler's bankruptcy proceedings, as these matters are unnecessary to our resolution of this appeal. (*City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 594, fn. 13.)

BACKGROUND

We recite a substantial portion of the underlying background from the decision on the parties' prior appeal in this case (*Koehler v. Prinz* (Sept. 25, 2023, C095229) [nonpub. opn.] (*Koehler*)), which is included in Koehler's appendix, as follows:

2

"A.    *The complaint, cross-complaint, and fee agreements*

"In 2013, when Elizabeth Prinz (Elizabeth) was 73 years old, she retained attorney Koehler to represent her in a lawsuit stemming from water damage to her house in the Campus Commons East Ranch development (Campus Commons).  In July of that year, Koehler filed a complaint on her behalf against the HOA and its property manager in Sacramento County Superior Court . . . (the 'Campus Commons Lawsuit').

"Koehler represented Elizabeth for approximately two years without any written fee agreement until, in July 2015, Elizabeth signed a contingency fee agreement.  The signed fee agreement provides, in relevant part:

" 'LEGAL SERVICES TO BE PROVIDED:  Attorneys shall represent Client(s) in a claim, court action or arbitration proceeding more commonly entitled "Prinz v. Campus Commons East Homeowners Assoc."[]  The claim of Client(s) shall include, but not be limited to, a complaint against defendant(s) for damages for personal injury and property loss as may be allowed under the law. . . .

" '[¶] . . . [¶]

" 'ATTORNEYS' FEES:  Attorneys shall [be] paid monthly the sum of $250.00 as a retainer until the conclusion of the Client(s)' claim or action.  Upon conclusion of the Client(s)' matter, Client(s) shall receive a credit of all retainer monthly sums paid as against any attorney fees earned by Attorneys.  Attorneys shall receive 33.3% of any settlement or arbitration or pre-judgment award in favor of Client(s).  The 33.3% will be paid to the Attorneys after any advanced costs have been returned by whomever advanced the costs.  In the event it is necessary to prepare the case for trial and/or the case is settled within 21 days of the initial trial date, or proceeds to trial, the Attorneys' fee shall be 40% of any settlement or judgment in favor of Client(s).'

"[¶] . . . [¶]

"Sometime in late 2015, Elizabeth's son, Drew, joined the Campus Commons Lawsuit as an additional party plaintiff.  In February 2016, Drew signed a contingency

3

fee agreement with Koehler that was nearly identical to the one signed by Elizabeth, except as to the amount of the retainer fee.

"In November 2016, the HOA and its property manager filed cross-complaints against the Prinzes (and each other). . . .

"B.    *Settlement of the Campus Commons Lawsuit*

"In March 2018, just before trial, the Prinzes settled their claims.  Collectively, the HOA and property manager agreed to pay $305,000 to the Prinzes.  From this, Koehler received a total of $109,374 as his contractual contingency fee.

"The settlement agreements excluded the HOA's cross-complaint against the Prinzes, the trial on which was scheduled to begin on March 26, 2018.  However, on March 23, 2018, the HOA filed a request for dismissal of its cross-complaint . . . .

"C.    *The attorney fee award*

"In July 2018, Koehler filed a motion for an award of attorney fees and costs under the CC&R's and Civil Code section 5975, subdivision (c) for successfully defending against the HOA's cross-complaint. . . .  In support of the motion, Koehler submitted a declaration stating that the fees should not be apportioned between the Prinzes' complaint and the HOA's cross-complaint because the work was 'intertwined and interdependent.'

"The trial court granted the motion and ultimately entered a 'judgment' awarding $377,280 in fees (plus $14,139.55 in costs) to the Prinzes as the 'prevailing parties' on the HOA's cross-complaint (the Fee Award).  The trial court denied the HOA's request for apportionment, agreeing with Koehler that the fees incurred to prosecute the complaint and the fees incurred to defend the cross-complaint were 'inextricably intertwined.'

"In August 2019, Koehler received a check from the HOA for $412,075.94 (the amount of the Fee Award plus postjudgment interest).  The same day, Koehler deposited the funds into his client trust account and filed an acknowledgement of satisfaction of judgment.  Days later, Koehler withdrew the funds and used them to pay the mortgages

4

on his personal residence and his taxes. Koehler neither notified the Prinzes that he received the check nor obtained their permission to withdraw the money from his client trust account.

"When the Prinzes learned that Koehler had taken the funds, they objected. According to the Prinzes, Koehler had represented that any fee award would be shared with them. Koehler responded that the entire Fee Award belonged to him.

"D.    *The dispute over the Fee Award*

"In November 2019, Koehler filed this action against the Prinzes. Koehler's second amended complaint seeks a judicial declaration that (1) the funds obtained in settlement of the Prinzes' complaint were properly distributed; (2) the fee agreements do not apply to fees incurred to defend against the HOA's cross-complaint; (3) the attorney fees awarded for defending against the HOA's cross-complaint belong exclusively to Koehler.

"The Prinzes filed a cross-complaint against Koehler. They allege[d] that Koehler improperly (1) withdrew funds from his client trust account without the Prinzes' notice or consent; (2) withheld costs owed to the Prinzes under the settlement of the Campus Commons Lawsuit; and (3) misappropriated the fees awarded to the Prinzes as part of the Fee Award. Their first amended cross-complaint includes claims against Koehler for financial elder abuse (Elizabeth only), conversion, breach of fiduciary duty, negligence, breach of contract, constructive trust, and injunctive relief.

"A bench trial was held on January 25 and 26, 2021. Four witnesses testified: Koehler, Elizabeth, Drew, and the Prinzes' expert witness, James Banks (Banks).

"Koehler testified that there was no contemplation of the HOA's cross-complaint at the time the fee agreements were executed and therefore his work defending against the cross-complaint was beyond the scope of those agreements. Koehler admitted that he previously told the Prinzes they would get a 'credit adjustment' upon final resolution of the attorney fee issue. He testified that was his 'thinking at that time.' Later, he came to

5

believe the entire fee award belonged to him.  Koehler testified that it was unnecessary for him to notify the Prinzes before withdrawing the funds from his client trust account because the funds belonged to him.

"Elizabeth testified to her understanding that a fee award meant more money in the 'pot' and that the parties would discuss how to distribute it.  She believed that any fee award would be placed in the trust account and could not be withdrawn from the account without her knowledge and consent.

"Drew testified that Koehler told him the fees incurred in defending against the HOA's cross-complaint would be covered by the fee agreements.  Drew believed any fee award would be allocated based upon the percentages in the fee agreements or that, at minimum, the Prinzes would be reimbursed for the contingency fee already paid.

"Banks testified that Koehler violated legal and ethical rules by, among other things, (1) failing to disclose his contingency fee agreements when seeking the Fee Award; (2) failing to maintain adequate records of his client trust account activities; (3) failing to notify the Prinzes when he received the Fee Award, withdrawing funds from his client trust account without their consent, and failing to return those funds when he learned there was a dispute; and (4) failing to inform the Prinzes he had a conflict of interest with respect to the funds.

"After trial, the trial court issued a tentative decision, finding that Koehler was entitled to partial judgment in his favor on his declaratory relief cause of action.  The court rejected the Prinzes' claim that the fee agreements governed allocation of the Fee Award.  It found that Koehler is the beneficial owner of the Fee Award to the extent it exceeds the amount paid to Koehler as a contingency fee.  Thus, the court denied the Prinzes' claim for breach of contract.

"On the other hand, the court found Koehler liable to the Prinzes on their causes of action for financial elder abuse (as to Elizabeth only), conversion, breach of fiduciary duty, and professional negligence.  The court awarded damages to the Prinzes in the

6

amount of $109,374, equal to what was paid to Koehler as a contingency fee. The court denied the Prinzes' requests for forfeiture, punitive damages, a constructive trust, and injunctive relief.

"The parties filed objections and proposals regarding the court's tentative decision. The court ruled on the objections/proposals and issued a final statement of decision, affirming its tentative decision with minor modifications." (*Koehler*, *supra*, C095229, fns. omitted.)

*The October 21, 2021, Amended Judgment*

In the October 21, 2021, amended judgment, the trial court ordered: "1. Judgment shall be entered on the Prinzes' First Amended Cross-Complaint in favor of the Prinzes on their causes of action for financial elder abuse (Elizabeth Prinz only), conversion, breach of fiduciary duty, and negligence; [¶] 2. Judgment shall be entered in favor of Koehler on the Prinzes' cause of action for breach of contract; [¶] 3. Partial judgment shall be entered in favor of Koehler on his declaratory relief cause of action. The Prinzes' fee agreements are limited in scope to prosecution of the Prinzes' claims against the HOA and the Property Manager and do not cover defense of the HOA Cross-Complaint; [¶] 4. The Prinzes shall recover the sums of $109,374 in compensatory damages, $160,970.63 in attorney's fees, $6,454.21 in costs, and $16,214.32 in prejudgment interest from Koehler. The Prinzes shall further recover interest on the total award of $293,013.16 at the rate of ten percent (l0%) per annum from the date of the entry of this judgment until paid."

*The Appeals from the Judgment*

Both Koehler and the Prinzes appealed from the judgment. Another panel of this court first concluded that the trial court "did not err in concluding that the percentages specified in the fee agreements do not govern distribution of the Fee Award." (*Koehler*, *supra*, C095229, fn. omitted.) Next, the court addressed who, between Koehler as the attorney and the Prinzes as the clients, was the owner of a statutory fee award under Civil

7

Code section 5975 where there was no agreement addressing the issue. (*Koehler*, C095229.) The court discussed *Flannery v. Prentice* (2001) 26 Cal.4th 572 (*Flannery*), and its holding that, "absent an enforceable agreement to the contrary, the proceeds of a statutory fee award 'belong to the attorneys who labored to earn them.' " (*Koehler*, C095229.) The court concluded that the "reasoning of *Flannery* applies to [Civil Code] section 5975. Thus, since there is no enforceable agreement to the contrary, we conclude the attorney fees awarded pursuant to [Civil Code] section 5975 (exceeding fees already paid) belong to Koehler as the attorney who labored to earn them." (*Koehler*, C095229.)

The court continued:

"Applying *Flannery*, the trial court concluded that while the Fee Award generally belongs to Koehler, he is required to offset/reimburse the $109,374 contingency fee that he received as his contractual share of the settlement. Koehler contends this was error and that he is entitled to the entire Fee Award. We disagree.

"As discussed, *Flannery* and its progeny hold that, absent a contrary agreement, a statutory attorney fee award belongs to the attorneys who labored to earn them (*Flannery*, *supra*, 26 Cal.4th at p. 590), *but only* to the extent the award 'exceed[s] fees the client already has paid.' (*Id*. at p. 577.) Here, it is undisputed that Koehler was paid a contingency fee of $109,374 as his contractual share of the settlement amount. The question before us is whether the $109,374 qualifies as 'fees already paid' under *Flannery*.

"Koehler argues that the fees incurred to defend the HOA's cross-complaint are wholly separate from the fees incurred to prosecute the Prinzes' complaint. Because the Prinzes never paid him any fees specifically for defending against the HOA's cross-complaint, Koehler contends he should receive the entire Fee Award.

"In our view, the relevant inquiry is not whether the parties *intended* the contingency fee to compensate Koehler for his defense work, but whether he was, in fact, compensated for his defense work. We conclude that he was. As Koehler argued to the

8

court in the prior Campus Commons litigation, and as that court subsequently found, 'there is no *substantive* point of demarcation between fees incurred to prosecute the complaint and fees incurred to defend the cross-complaint. They are inextricably intertwined.' Koehler cannot now claim that there is no overlap between his work prosecuting the complaint and his work defending against the cross-complaint. [Citation.] Therefore, to prevent Koehler from being paid twice for the same work, it is necessary to offset/reimburse the fees already paid." (*Koehler*, *supra*, C095229.)

This court also rejected Koehler's contentions that the evidence was insufficient to support the findings that he was liable for conversion and financial elder abuse. (*Koehler*, *supra*, C095229.)

*Koehler's Motion to Vacate the Judgment*

Following remittitur, Koehler filed a motion to vacate the judgment pursuant to Code of Civil Procedure sections 473, subdivision (d), and 663, cause (1). Koehler argued that the judgment was void and that it was voidable, claiming that the judgment "is voidable because the trial court acted in excess of its jurisdiction when it implicitly found that Elizabeth Prinz had standing to claim an ownership interest in the statutory fee award, Civil Code section 5975, which necessarily means that her conversion and financial elder abuse claims were untenable; the same judgment is voidable to Drew Prinz because he made no [Civil Code] section 5975 payment to Koehler and therefore the trial court's [Civil Code] section 5975 reimbursement judgment to Drew is void." (Bold typeface omitted.) Koehler argued that the trial court had "acted in excess of its jurisdiction when it conflated the attorneys' fees paid for the prosecution of the original complaint (out of the damages awarded via settlement) with the statutory attorneys' fees (separately awarded for the defense of the HOA's cross-complaint)."

*The Trial Court's Denial of Koehler's Motion to Vacate the Judgment*

In a tentative ruling, the trial court denied Koehler's motion to vacate the amended judgment. The court first determined that the motion was untimely under Code of Civil

9

Procedure section 663, a determination Koehler does not challenge on appeal.  Turning to Code of Civil Procedure section 473, subdivision (d), the court concluded that nothing in the judgment roll indicated that the judgment was void on its face.  The court stated that Koehler's motion was based on arguments that the trial court made erroneous decisions in excess of its jurisdiction, and that, even if these arguments were correct, this would render the judgment voidable, not void.  The court noted that Koehler's motion expressly argued that the judgment was *voidable* because the court acted *in excess of its jurisdiction*.  However, a motion to set aside a voidable judgment must be made within six months, and, here, Koehler's motion was filed more than six months after entry of the judgment.  Additionally, the court stated that a motion to vacate a voidable order is properly denied after the time to appeal runs and the order becomes final, and, here, the "order has already been the subject of an appeal and has become final.  Thus, the motion is untimely," and the court lacked authority to address it on the merits.  The trial court affirmed its tentative ruling after no party requested oral argument.

DISCUSSION

I

*Standard of Review and Summary of Arguments*

"The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order."  (Code Civ. Proc., § 473, subd. (d).)  "[I]nclusion of the word 'may' in the language of section 473, subdivision (d) makes it clear that a trial court retains discretion to grant or deny a motion to set aside a void judgment.  [Citation.] However, the trial court has no statutory power under section 473, subdivision (d) to set aside a judgment that is not void.  [Citation.]  Thus, the reviewing court faces two separate determinations when considering an appeal founded on section 473, subdivision (d):  whether the judgment is void and, if so, whether the trial court properly exercised its discretion in setting (or not setting) it aside.  [Citation.]  The trial court's determination whether a judgment is void is reviewed de novo; its decision whether or

10

not to set aside a void order is reviewed for abuse of discretion." (*Kremerman v. White* (2021) 71 Cal.App.5th 358, 369.)

" ' "A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll." ' [Citation.] This inquiry . . . 'does not hinge on evidence: A void judgment's invalidity appears on the *face of the record*.' " (*Kremerman v. White*, *supra*, 71 Cal.App.5th at p. 370.) Thus, a "judgment 'is considered void on its face only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence.' " (*Ibid*.) The judgment roll here consists of "the pleadings, . . . the statement of decision of the court, . . . and a copy of the judgment." (Code Civ. Proc., § 670, subd. (b).)

"The distinction between void and voidable orders is frequently framed in terms of the court's jurisdiction." (*Lee v. An* (2008) 168 Cal.App.4th 558, 563.) "The term 'jurisdiction,' ' . . . has so many different meanings that no single statement can be entirely satisfactory as a definition.' [Citation.] Essentially, jurisdictional errors are of two types. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' " (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660 (*American Contractors*).) "Other courts have held more broadly [that] '[t]he granting of relief, which a court under no circumstances has any authority to grant, has been considered an aspect of fundamental jurisdiction for the purposes of declaring a judgment or order void.' " (*People v. Codinha* (2023) 92 Cal.App.5th 976, 991, quoting *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 20 (*Plaza Hollister*).) "When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and 'thus vulnerable to direct or collateral attack at any time.' " (*American Contractors*, at p. 660.)

"However, 'in its ordinary usage the phrase "lack of jurisdiction" is not limited to these fundamental situations.' [Citation.] It may also 'be applied to a case where, though

11

the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable." (*American Contractors*, *supra*, 33 Cal.4th at p. 661.)

As stated, Koehler advances seven issues under the main headings in his opening brief, with numerous subissues. However, nowhere does he address whether the judgment is void on its face; in fact, rather inexplicably, in the argument section of his opening brief, the word "void" does not appear once (although, elsewhere in his briefing, he does state that he "will demonstrate the trial court's decision is void on its face"). Instead, Koehler's arguments address what he characterizes as the trial court's erroneous rulings on the underlying merits, some of which Koehler previously raised in his appeal from the judgment. (*Koehler*, *supra*, C095229.) Nevertheless, we consider his arguments in the context of whether he demonstrated that, contrary to the trial court's determination, the judgment was void on its face. Koehler's opening brief also includes a section entitled "Adherence to Standards of Attorney Conduct," (bold typeface omitted) which we will also address, *post*, in which Koehler does assert that the judgment is void on its face. We will conclude that Koehler generally mischaracterizes or misunderstands the award of tort damages to the Prinzes, and that he has not established a lack of jurisdiction in a fundamental sense rendering the judgment void on its face.

II

*Jurisdiction to Award Civil Code Section 5975 Attorney Fees to the Prinzes*

In Koehler's argument section A, he argues that the trial court lacked "jurisdictional authority to award [Civil Code] section 5975 attorney fees to the Prinzes' common law negligence complaint." (Bold typeface and some capitalization omitted.)

12

Koehler argues that the trial court overlooked the fact that the Legislature limited trial courts' authority to award attorney fees under Civil Code section 5975 to disputes involving the enforcement of a common interest development's governing documents. He maintains that the Prinzes' complaint in the Campus Commons Lawsuit did not plead a breach of the covenants and restrictions and thus did not seek to enforce governing documents. Therefore, Koehler contends that the Prinzes' complaint was "not within" Civil Code section 5975. Koehler also emphasizes that Elizabeth was not an "owner of a separate interest" (underlining omitted) within the meaning of Civil Code section 5975, and therefore she was not eligible to receive an award of attorney fees under subdivision (a), of that section. Koehler also argues that, because the Prinzes and the defendants in the Campus Commons Lawsuit reached a settlement and each party agreed to waive claims for attorney fees, there was no "prevailing party" entitled to attorney fees under Civil Code section 5975, subdivision (c). Koehler states that the attorney fees awarded to him under Civil Code section 5975 were separate from the settlement in the Campus Commons Lawsuit. We conclude Koehler has not demonstrated that the amended judgment was void.

Civil Code section 5975 provides: "(a) The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both. [¶] (b) A governing document other than the declaration may be enforced by the association against an owner of a separate interest or by an owner of a separate interest against the association. [¶] (c) In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs."

Koehler does not contend that, in issuing the October 21, 2021, amended judgment, the trial court lacked personal jurisdiction over any party. Nor does he contend

13

that the trial court lacked subject matter jurisdiction over the matter before it.  Instead, Koehler argues the trial court lacked the authority to award the Prinzes $109,374 in attorney fees under Civil Code section 5975 because their complaint in the Campus Commons Lawsuit did not involve the enforcement of governing documents, because Elizabeth was not an "owner of a separate interest," and because there was no "prevailing party" in that lawsuit.  (Civ. Code, § 5975.)

However, the trial court did *not* award the Prinzes $109,374 in attorney fees *under Civil Code section 5975*.  Rather, the court determined that Koehler was entitled to $412,075.94 as an attorney fee under Civil Code section 5975, but only to the extent that the amount exceeded the fees already paid by the Prinzes.  Because Koehler had retained the entire attorney fee award, the court determined Koehler owed to the Prinzes *in tort damages* the amount they already paid through the contingency fee:  $109,374.

Koehler has not established any " '[l]ack of jurisdiction in its most fundamental or strict sense mean[ing] an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties' " (*American Contractors*, *supra*, 33 Cal.4th at p. 660), or that the trial court "under no circumstances" had authority to grant the relief it did (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 20).  The trial court correctly concluded that Koehler failed to demonstrate that the judgment was void on its face.

### III

### *Money Damages*

In Koehler's argument section B, he relies on the fact that, while Civil Code section 5975, subdivision (c), authorizes attorney fees, it does not authorize money damages.  However, the trial court awarded the Prinzes damages based on "its decision that Koehler failed to reimburse his complaint contingency fee with the [Civil Code section] 5975 attorney fee award money deposited in his trust account."  Thus, according

14

to Koehler, the trial court "ruled outside of the statute." We conclude Koehler has not demonstrated that the amended judgment was void.

The trial court awarded $412,075.94 in attorney fees, costs, and postjudgment interest on the motion for attorney fees under Civil Code section 5975. The court determined that the $412,075.94 belonged to Koehler, not the Prinzes, but only "to the extent it exceeds the fees the Prinzes already paid as a contingency fee in the settlement of their claims against the HOA and the Property Manager ($109,374)." Parenthetically, the court noted: "(Although the contingency fee payment related to the settlement of the Prinz lawsuit, the Court previously held that the attorney fees incurred to prosecute the Prinz lawsuit and fees incurred to defend the HOA Cross-Complaint are 'inextricably intertwined.' [Citation.] Thus, the contingency fees paid necessarily include time that Koehler spent as to both.)" The court then found in favor of the Prinzes on their causes of action to recover damages for financial elder abuse (as to Elizabeth only), conversion, breach of fiduciary duty, and negligence, and awarded them damages in the amount of $109,374, the amount of the contingency fee they had paid to Koehler.

The trial court did *not* impermissibly award $109,374 in money damages to the Prinzes *pursuant to Civil Code section 5975* as suggested by Kohler. Again, the trial court determined that Koehler was entitled to $412,075.94 as an attorney fee under Civil Code section 5975, but only to the extent that the amount exceeded the fees already paid by the Prinzes. Because he retained the entire attorney fee award, Koehler owed the amount of fees already paid by the Prinzes, $109,374, to the Prinzes *in tort damages*. This does not amount to an award of tort damages *under Civil Code section 5975* or render the judgment void on its face.

Koehler has not established any " '[l]ack of jurisdiction in its most fundamental or strict sense mean[ing] an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties' " (*American Contractors*, *supra*, 33 Cal.4th at p. 660), or that the trial court "under no circumstances" had authority

15

to grant the relief it did (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 20). Koehler has not demonstrated that the judgment is void on its face.

IV

*Civil Code Section 5975 and Fiduciary Duties*

Koehler's argument section C addresses the fiduciary duty the homeowner and the HOA owe to each other, and the premise that neither the homeowner nor the HOA may profit at the expense of the other. Koehler contends that awarding Drew the Civil Code section 5975 attorney fees caused Drew to breach his fiduciary duty to the HOA because Drew profited at the expense of HOA membership. Koehler has not demonstrated that the amended judgment was void.

We put aside questions such as whether Koehler lacks standing to raise arguments premised on fiduciary duties Drew and the HOA owed to one another. Drew was not awarded an attorney fee or damages from the HOA under Civil Code section 5975. He was awarded tort damages against, and payable by, Koehler. Koehler's arguments would not establish that the judgment is void. They are not illustrative of a " '[l]ack of jurisdiction in its most fundamental or strict sense mean[ing] an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties' " (*American Contractors*, *supra*, 33 Cal.4th at p. 660), or that the trial court "under no circumstances" had authority to grant the relief it did (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 20).

V

*The Trial Court's Characterization of the Attorney Fee Award*

Under Koehler's argument section D, he argues that the trial court stated that the Civil Code section 5975 attorney fee award for the defense against the cross-complaint excluded complaint fees paid. Koehler argues that the trial court was without authority to force him to "return his earned complaint fees." He also suggests the trial court infringed on his right to contract by forcing him to return his contingency fee. According to

16

Koehler, the trial court "acknowledged <u>the fees to prosecute and settle the complaint were separate from any award of defense fees</u>, although 'inextricably intertwined.' " Koehler argues that "the trial court mistakenly looked to the underlying trial court's reference to 'inextricably intertwined' to find payment of complaint fees was payment of defense fees; and, thereby entitled the Prinzes to reimbursement of their damages previously shared with Koehler." Koehler also states that the trial court characterized the fees the parties agreed to waive in settling the complaint as "uncompensable" and concludes that the "underlying trial court made clear the 'uncompensable complaint fees' (*i.e.*, complaint fees addressed and waived in the parties['] settlements) were not *within* its awarded [Civil Code] section 5975 defense fees; and, <u>as a matter of law they could not be</u>." We conclude Koehler has not demonstrated that the amended judgment was void.

These arguments largely seek to relitigate determinations made in the trial court and affirmed by this court. (*Koehler*, *supra*, C095229.) Koehler's arguments do not demonstrate that the trial court lacked " 'jurisdiction in its most fundamental or strict sense mean[ing] an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties' " (*American Contractors*, *supra*, 33 Cal.4th at p. 660), or that the trial court "under no circumstances" had authority to grant the relief it did (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 20). The trial court correctly concluded that the judgment was not void on its face.

VI

*Awarding Attorney Fees "Outside" of Civil Code Section 5975*

In Koehler's argument section E, he argues the trial court exceeded its jurisdictional authority by awarding attorney fees as "inextricably intertwined" that are "outside of" Civil Code section 5975. Koehler argues that a trial court may not employ the "inextricably intertwined" theory in circumstances such as those at issue here. According to Koehler, the authorizing statute defines the limits of the court's authority to find awards "inextricably intertwined," and here, Civil Code section 5975 limits the

17

recovery of attorney fees. We conclude Koehler has not demonstrated that the amended judgment was void.

Koehler's arguments about the trial court's discussion of the contingency fee and the Civil Code section 5975 fee award being "inextricably intertwined" simply do not evince a fundamental lack of jurisdiction, such as lack of personal jurisdiction or subject matter jurisdiction. And again, the Prinzes were not awarded $109,374 *pursuant to Civil Code section 5975*. Koehler has not established any " '[l]ack of jurisdiction in its most fundamental or strict sense mean[ing] an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties' " (*American Contractors*, *supra*, 33 Cal.4th at p. 660), or that the trial court "under no circumstances" had authority to grant the relief it did (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 20).

VII

*Recovery of Attorney Fees on Prinzes' Complaint*

In Koehler's argument section F, he argues the Prinzes were not entitled to recover attorney fees in the Campus Commons Lawsuit because there was no statutory or contractual provision for the recovery of attorney fees in that case. He invokes the "American rule" codified in Code of Civil Procedure section 1021, that each party to a lawsuit ordinarily must pay his or her own attorney fees. He also argues that the settlement agreement prohibited attorney fees on the complaint. Additionally, Koehler relies on rule 5.4 of the State Bar Rules of Professional Conduct, which, with exceptions, prohibits a lawyer from sharing legal fees with a nonlawyer. Koehler again has not demonstrated that the amended judgment was void.

The Prinzes did not recover attorney fees on their complaint in the Campus Commons Lawsuit. They were awarded tort damages in their lawsuit against Koehler in the amount *equal to* the contingency fee they paid to Koehler in the underlying Campus Commons Lawsuit. Koehler's arguments as to the trial court's lack of authority to award the Prinzes attorney fees on their complaint in the Campus Commons Lawsuit are

18

misplaced.  Again, none of Koehler's arguments would render the judgment void. Koehler has not established any " '[l]ack of jurisdiction in its most fundamental or strict sense mean[ing] an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties' " (*American Contractors*, *supra*, 33 Cal.4th at p. 660), or that the trial court "under no circumstances" had authority to grant the relief it did (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 20).

VIII

*Koehler's Adherence to Standards of Attorney Conduct*

Following the "PLEADINGS AND ARGUMENT" section of his opening brief, Koehler includes a separate section entitled "Adherence to Standards of Attorney Conduct."  (Bold typeface omitted.)  In it, he argues that, had he "shared the [Civil Code] section 5975 attorney fee award with the Prinzes . . . he would have" violated the State Bar Rules of Professional Conduct; breached the settlement agreement with opposing counsel; breached "the underlying court's dismissal orders . . ."; violated Civil Code section 5975; breached his ethical duty by diverting HOA funds to the Prinzes; breached "his ethical duties to protect Drew from breaching his financial fiduciary duties to the HOA . . ."; and breached Code of Civil Procedure section 1021.  Arguing the Prinzes had no interest in the Civil Code section 5975 attorney fee award, Koehler further contends that the findings that he committed elder abuse, conversion, breach of fiduciary duty, and negligence must be vacated.

This section of Koehler's opening brief seeks to relitigate several of the arguments set forth above, as well as the trial court's determinations on the merits of the Prinzes' successful causes of action against him.  Koehler has not demonstrated that the underlying judgment was void because the trial court " '[l]ack[ed] . . . jurisdiction in its most fundamental or strict sense mean[ing] an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties' " (*American Contractors*, *supra*, 33 Cal.4th at p. 660), or that the trial court "under no

19

circumstances" had authority to grant the relief it did (*Plaza Hollister*, *supra*, 72 Cal.App.4th at p. 20).

DISPOSITION

The postjudgment order denying Koehler's motion to vacate the amended judgment is affirmed.  The Prinzes shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


\s_____<br>
Krause, J.

We concur:


_____<br>
\s\<br>
Mauro, Acting P. J.


_____<br>
\s\<br>
Wiseman, J.*

---

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.